J. W. KELLY & COMPANY *et al. v.* S. A. CONNER *et al.*[1]
and
JOHN H. CONNER *et al. v.* J. W. KELLY *et al.*

(*Knoxville.*   September Term, 1909.)

1. **CHANCERY JURISDICTION.** None to enjoin prosecutions for violation of criminal laws.

The chancery court has no jurisdiction to enjoin pending or threatened prosecutions for the violation of the criminal laws of the State. This proposition, as a rule of general application, is unquestionably sound and well established in our jurisprudence. (*Post, pp.* 352, 353, 359-368, 397, 398.)

Case cited and approved:   Fritz v. Sims, 122 Tenn., 137, and numerous cases in other jurisdictions cited in the opinion, pages 362-368.

Cases cited and distinguished:   Trading Stamp Co. v. Memphis, 101 Tenn., 181; Ignaz v. Knoxville, 1 Tenn. Chy. App., 5; and numerous cases in other jurisdictions cited and reviewed in the opinion, pages 369-393.

2. **SAME.** Inherent and statutory jurisdiction is defined.

The inherent jurisdiction of our chancery court is the jurisdiction of the high court of chancery of England, which was adopted by North Carolina as the jurisdiction of the chancery court of that State before the session act ceding to the federal government the territory subsequently becoming Tennessee, and which was adopted in this State, upon its formation and organization, by its adoption of the laws of North Carolina, and in the crea-

---

[1] As to injunction against criminal proceedings, see note to Crighto v. Dahmer (Miss.), 21 L. R. A., 84, and note to Littleton v. Burgess (Wyo.), 2 L. R. A., (N. S.), 631.

Kelly v. Conner.

tion of its chancery court; and the jurisdiction subsequently vested in said court by the legislature is called its statutory jurisdiction. (*Post, pp.* 360, 361.)

Code cited and construed: Sec. 6088 (S.); sec. 5022 (M. & V.); sec. 4279 (T. & S. and 1858).

Acts cited and construed: Acts 1835-36, ch. 4.

Constitution cited and construed: Art. 6, secs. 1 and 8.

Cases cited and approved: Jackson v. Nimmo, 3 Lea, 597; Smith v. Bank, 115 Tenn., 18.

3. **POLICE POWER.** Statute prohibiting the sale of intoxicating liquors is within the police power of the State, provided there is no interference with interstate commerce.

The statute (Acts 1909, ch. 1), prohibiting the sale of intoxicating liquors, as a beverage, within four miles of any schoolhouse, is a police measure of general application, within the police power of the State, and enacted upon a subject over which the legislature has plenary power, provided there is no interference with interstate commerce. (*Post, pp.* 345, 373-376.)

Acts cited and construed: Acts 1909, ch. 1.

Cases cited and approved: Webster v. State, 110 Tenn., 504 (and citations); Mugler v. Kansas, 123 U. S., 623 (and citations).

4. **CHANCERY JURISDICTION.** None to enjoin prosecutions for violation of a criminal law until its validity may be determined.

The chancery court of this State has no jurisdiction to enjoin prosecutions for the violation of a statute enacted under the police power until the court may construe it and determine its validity or invalidity. The construction and validity or invalidity of criminal statutes must be determined by the courts invested with the administration and enforcement of the criminal laws. (*Post, pp.* 376, 377.)

5. **SAME.** To enjoin prosecutions under city ordinances, when and when not.

A prosecution or action for the violation of a municipal ordinance is a civil case, and not a criminal case; and where such ordi-

Kelly v. Conner.

nance is void, it seems that prosecutions under it may be enjoined for the protection and preservation of property rights, and to prevent their destruction, but prosecutions for the violation of ordinances imposing penalties for specific acts for the preservation of the peace and good order of the corporate community will not be enjoined. (*Post, pp.* 377, 378, 381, 382, 383, 384-393.)

Cases cited and approved:   Meaher v. Chattanooga, 1 Head, 75; Bristol v. Burrow, 5 Lea, 128; Wood v. Mayor, 5 Heisk., 441; O'Haver v. Montgomery, 120 Tenn., 448; Ignaz v. Knoxville, 1 Tenn. Chy. App., 5; Trading Stamp Co. v. Memphis, 101 Tenn., 181; Manufacturing Co. v. Los Angeles, 189 U. S., 207; Dobbins v. Los Angeles, 195 U. S., 241; Express Co. v. Ensley (C. C.), 116 Fed., 756; Hutchinson v. Beckham, 118 Fed., 399, 55 C. C. A., 333; Railroad v. Catlettsburg (C. C.), 129 Fed., 427; Atlanta v. Gaslight Co., 71 Ga., 106; Mobile v. Railroad, 84 Ala., 125; Austin v. Cemetery, 87 Tex., 330; Baseball & Amusement Co. v. New Orleans, 118 La., 228; Fellows v. Charleston, 62 W. Va. 665; Coal Co. v. St. Louis, 130 Mo., 323 (citing Kansas v. Clark, 68 Mo., 588; Hollwedell, 74 Mo., 395; St. Louis v. Marchel, 99 Mo., 475); Poyer v. Des Plaines, 123 Ill., 111; Denver v. Beede, 25 Colo., 172.

Cases to the contrary cited and approved:   Wardens v. Washington, 109 N. C., 21; Railroad v. Catlettsburg (C. C.), 129 Fed., 427; Logan v. Telegraph Co. (C. C.), 157 Fed., 574.

6. **SAME. None to construe criminal statutes, and enjoin prosecutions for their violation.**

The chancery court has no jurisdiction to entertain a bill to construe a valid criminal statute, and pending the proceeding, or at its termination, enjoin prosecutions for violations of such statute. (*Post, p.* 393.)

Cases cited and approved:   Insurance Co. v. Craig, 106 Tenn., 641; Drug Co. v. Truett, 97 Tex., 380; Arbuckle v. Blackburn, 113 Fed., 625.

Kelly v. Conner.

7. **SAME. None to enjoin criminal prosecutions on account of multiplicity of suits.**

The chancery court will not enjoin prosecutions for the violations of a statute (Acts 1909, ch. 1), prohibiting the sale of intoxicating liquors, as a beverage, within four miles of any schoolhouse, construed by the prosecuting officers to prohibit sales at wholesale as well as at retail, at the suit of operators of distilleries and breweries insisting upon the invalidity of the statute, and, if valid, that it does not apply to them as wholesalers, upon the ground that they will as wholesalers be subjected to a multiplicity of prosecutions; for on the first prosecution the validity and construction of the statute will be determined, and it is presumed that the prosecuting officers will not use their authority to harass, vex, and oppress citizens. (*Post, p.* 394.)

Cases cited and approved: Denver v. Beede, 25 Colo., 172; Poyer v. Des Plaines, 123 Ill., 111; Brown v. Birmingham, 140 Ala., 600, 601.

8. **SAME. None to enjoin criminal prosecutions upon the ground of irreparable injury, when.**

The chancery court will not enjoin prosecutions for violations of a statute (Acts 1909, ch. 1), prohibiting the sale of intoxicating liquors, as a beverage, within four miles of any schoolhouse, construed by the prosecuting officers to prohibit sales at wholesale as well as at retail, at the suit of operators of distilleries and breweries insisting upon the invalidity of the statute, and, if valid, that it does not apply to them as wholesalers, upon the ground that irreparable injury will result to them unless the relief is granted, where it appears that their sales before the enactment of the statute were chiefly in other States and countries, and where they may ship and store their products and dispose of them in sister States and foreign countries without loss. (*Post, pp.* 394, 395.)

Kelly v. Conner.

9. **SAME. Same. Irreparable injury must be real and practically unavoidable to authorize injunction against criminal prosecution.**

To authorize an injunction against prosecutions for the violation of a criminal statute, upon the ground that irreparable injury will result unless such relief is granted, the irreparable injury must be real and practically unavoidable and certain to follow, and not merely fancied, or a matter of inconvenience. (*Post, p.* 395.)

10. **SAME. None to enjoin criminal prosecutions because of multiplicity of suits, irreparable injury, and invalidity of statute, where defense at law is adequate and unembarrassed.**

The chancery court has no inherent or statutory jurisdiction to enjoin threatened criminal prosecutions under a statute enacted by a State in the exercise of the police power in relation to which the legislature has complete jurisdiction, although it be charged that the statute is invalid and that a multiplicity of actions thereunder will injure and destroy civil and property rights of the complainants, and that the damages resulting will be irreparable, when the complainants' defense thereto, in the court having jurisdiction of the offense, is adequate and unembarrassed. (*Post, pp.* 396, 397.)

11. **SAME. Supreme court has no jurisdiction on appeal, where the chancery court had none.**

Where the chancery court has no jurisdiction to entertain and determine a case on the merits, the supreme court on appeal from the chancery court cannot do so, but must dismiss it, though the case is of great public interest. (*Post, p.* 397.)

FROM HAMILTON.

Appeal from the Chancery Court of Hamilton County. T. M. M'CONNELL, Chancellor.

WILLIAMS & LANCASTER, LEWIS M. COLEMAN, SPEARS & LYNCH, E. E. WRIGHT, JOHN J. VERTREES, and F. ZIMMERMAN, for complainants.

ATTORNEY-GENERAL CATES, JOE V. WILLIAMS, and N. L. BACHMAN, for defendants.

MR. JUSTICE SHIELDS delivered the opinion of the Court.

These consolidated causes were heard together in the chancery court of Hamilton county and in this court, and will be so determined.

Complainants in the first-styled cause are J. W. Kelly & Co., Wakeman Distilling Company, and Chattanooga Brewing Company, all corporations created and organized under the laws of Tennessee, having their domiciles and places of business in Chattanooga, Hamilton county, Tenn., where they owned and operated distilleries and a brewery, and were, previous to July 1, 1909, without question, lawfully engaged in the wholesaling of whiskies and beer.

The defendants are S. A. Conner, sheriff of Hamilton county, and Matt N. Whittaker, district attorney of the State of Tennessee for the Sixth judicial circuit, of which Hamilton county is a part, and the mayor and aldermen of the city of Chattanooga, which is a municipal corporation located in Hamilton county.

Complainants brought their bill July 6, 1909, in the chancery court of Hamilton county, for the purpose of enjoining Matt N. Whittaker, as district attorney, and S. A. Conner, as sheriff, from instituting and prosecuting criminal actions against them for sales of whiskies and beer that they might make as wholesale dealers at their places of business in the city of Chattanooga, Hamilton county, Tenn., in violation of the provisions of an act of the general assembly of Tennessee, known as the "Sales Act" or "Four-Mile Law of 1909," being chapter 1, p. 3, of the published Acts of Tennessee of 1909, because, as they insist, that statute, when properly construed, does not apply to and prohibit sales of whiskies and beer by wholesale, and, further, that the statute was not enacted in the form and ceremony prescribed by the constitution of Tennessee, and its provisions violate certain other provisions of the constitutions of Tennessee and of the United States.

The statute sought to be construed and attacked—the "Four-Mile Law of 1909," or the "Sales Act"—was enacted January 20, 1909, and is in these words, viz.:

"An act to prohibit the sale of intoxicating liquors as a beverage near any school house, public or private,

where a school is kept, whether the school be in session or not.

"Section 1.  Be it enacted by the general assembly of the State of Tennessee, that it shall not be lawful for any person to sell or tipple any intoxicating liquors, including wine, ale, and beer as a beverage, within four miles of any schoolhouse, public or private, where a school is kept, whether the school be then in session or not, in this State, and that anyone violating the provisions of this act shall be guilty of a misdemeanor, and upon conviction, shall be punished by fine for each offense of not less than $50.00 nor more than $500.00, and imprisonment for a period of not less than thirty days nor more than six months.

"Sec. 2.  Be it further enacted, that the grand juries shall have and exercise inquisitorial powers in respect to violations of this act, and it shall be the duty of the circuit and criminal judges of the State to give the same in charge to them.

"Sec. 3.  Be it further enacted that all laws in conflict with this act be, and the same are hereby repealed.

"Sec. 4.  Be it further enacted, that this act shall take effect from and after July 1st, 1909, the public welfare requiring it."

Thereafter, February 4, 1909, the general assembly enacted another statute, known as the "Manufacturers Act" (Acts 1909, p. 21, c. 10) which prohibited the manufacture in this State, for the purpose of sale, of intoxicating liquors, including all vinous, spirituous, and

malt liquors, imposing for its violation fine and imprisonment, and which by special provision was effective from and after January 1, 1910. It contains no provision in relation to the sale of intoxicating liquors.

The general assembly of Tennessee had before this legislation, enacted several other statutes prohibiting sales of intoxicating beverages within four miles of schoolhouses, the exact provisions of which it is not necessary to here set forth. The first of these statutes was enacted in 1877, being chapter 23, p. 37, of the Acts of 1877, and known as the "Four-Mile Law of 1877." The next was enacted in 1887, being chapter 167, p. 293, of the published acts of that year, and known as the "Four-Mile Law of 1887." This last act was amended from time to time, so that sales of intoxicating beverages were prohibited in practically every part of Tennessee, except the cities of Memphis, Nashville, Chattanooga, and La Follette. Whether sales by wholesale or only by retail were prohibited by this legislation is not now necessary to be considered; these acts being only referred to that the objections made by complainants to the "Four-Mile Law of 1909" may be fully understood.

Complainant's charge in their bills that the statute called in question (chapter 1, Acts 1909), when properly construed, does not prohibit sales made by wholesale dealers, but that, if otherwise construed, in its enactment and provisions, article 2, section 17, and article 1, section 8, of the constitution of Tennessee and the "due process clause" and "commerce clause" of the fed-

eral constitution were violated, and that it is for these reasons void. Complainants' contentions fully appear in their assignment of errors, which will be set out in a subsequent part of this opinion.

Complainants, for the purpose of showing a case within the jurisdiction of a court of equity, and to enable them to present the constitutional objections made to the provisions of the statute, further charge:

That, when the Sales Act was enacted January 20, 1909, they were, and had been for many years previous thereto, engaged in the lawful manufacture and sale, as wholesale dealers, of whiskies and beer in the city of Chattanooga, where they had their distilleries and brewery, their warehouses and places of business, having customers in Tennessee and many other States of the Union, and one of them in Mexico and the Philippine Islands; that their plants represented investments of many thousands of dollars, and their businesses were established, valuable, and profitable, all of which would be greatly depreciated in value, and rendered almost worthless, if they were prohibited from making sales of their whiskies and beer in Chattanooga.

That J. W. Kelly & Co. had on hands January 20, 1909, stored in its own warehouses and that of the United States, 7,500 barrels of whiskey, of the value of $700,000, and after deducting what it could sell by diligent efforts, about 1,500 barrels, and adding what it thereafter manufactured, it had in stock July 1, 1909, about 8,000 barrels; that the Wakeman Distilling Com-

pany had on hands January 20, 1909, 1,600 barrels of whisky, of the value of $135,000, of which it was only able to sell 500 barrels, leaving remaining July 1, 1909, 1,100 barrels, and that much of this whisky was raw, and required several years to age and mellow it, and make it marketable, and for that purpose it was in the bonded warehouse of the government. The Chattanooga Brewing Company, when the law was passed, had in stock 22,329 barrels of beer, afterwards manufactured 44,922 barrels, and sold 40,531 barrels, leaving on hands July 1, 1909, 26,000 barrels, of the value of $200,000, if it could there be sold.

That the value of this property consisted in its salability, and that, if complainants were prohibited from selling it, its value would be greatly depreciated and destroyed, and they would suffer irreparable loss and injury.

They further charge that there are numerous schoolhouses, where school is kept, in Hamilton county, and all other counties of the State, so situated that there is scarcely any territory which is not within four miles thereof, unless it be in some small, sparsely settled portions of the State.

They further charge that the defendant M. N. Whittaker, district attorney, has construed the Sales Act to prohibit all sales of intoxicating beverages, whether by wholesale or retail, in which construction the defendant S. A. Conner, sheriff, concurs, and that these officers have announced their intention to arrest and prosecute

all persons making such sales in Hamilton county, and that they will do so if not prohibited by the injunctive process of the chancery court, notwithstanding, as complainants are advised and charge, the said "Sales Act" does not apply to sales made by wholesale, or for the purpose of exportation to other States and countries, and is also unconstitutional and void for the reasons heretofore stated.

They further charge:

"To do business, complainants must sell and make many sales of the liquors they have, and every sale will constitute an offense, if the said law be valid and forbid wholesale sales. The punishment imposed is both fine and imprisonment—a punishment extremely severe. To cease to sell will break up and destroy the business of complainants and cause their said valuable properties to become a loss on their hands. To sell will subject them to numerous prosecutions and expensive trials, which they aver and say they ought not to be subjected to, inasmuch as said act is void, and, if valid, does not forbid or make unlawful wholesale sales—the only kind of sales complainants propose to make; and

"Because of this situation complainants say that they are entitled, as law-abiding citizens of Tennessee, to invoke the injunctive powers of this court for their protection. They charge and say that the act which, if it be criminal at all, constitutes the crime, is the act of seling their liquors, which act of selling is the only way in which they can use and enjoy the same; and the said act

of selling claimed to be criminal is a property act, and not one which in itself affects the right of any other person, in any way—that is, the act of selling, claimed to be criminal, is the sole and only form in which complainants can enjoy, use, and utilize their property hereinbefore described."

The prayer of the bill, other than that for process, is in these words:

"That the writ of injunction issue now, restraining and enjoining defendants, and every one of them, personally and officially, their agents, deputies, police and subordinates, from

"(a)  Attempting to arrest, and from arresting, any of complainants for making any wholesale sale of the intoxicating liquors they now have, whether they were on hand January 20, 1909, or not, at their respective places of business in the bill described, in Hamilton county, Tennessee, at any time either before or after July 1, 1909, in violation of said Sales Act of January 20, 1909; and from

"(b)  Preparing or preferring and prosecuting any indictment against them, or any of them, in the criminal court of Hamilton county, Tennessee, for making any such sale or sales above described; and that

"(c)  Said Sales Act be declared and decreed not to prohibit sales of intoxicating liquors by wholesale dealers in wholesale packages or quantities, in Tennessee; and that

"(d)  Said act be declared not to prohibit such

wholesale sales by dealers in such incorporated towns in Tennessee as may be lawfully made under chapter 167 of the Acts of 1887, hereinbefore mentioned, as the same stood amended before said Sales Act of January 20, 1909, was passed; and that

"(e)   Said Sales Act of 1909 be decreed to be unconstitutional and void; and that

"(f)   Injunction granted be made perpetual."

In the second bill, filed by John H. Conner, a stockholder of appellant J. W. Kelly & Co., against J. W. Kelly & Co., its president, Carl White, and the official defendants, practically the same facts are set out and the same contentions made as in J. W. Kelly & Co.'s original bill; the proceeding being one by a stockholder to enjoin the company and its president from shutting down the business because of the Sales Act of 1909, which is charged to be inapplicable to wholesale dealers and unconstitutional, and an injunction being prayed because of the irreparable damage to said Conner's interest in the company.

The causes were consolidated and heard by the chancellor upon motions made by defendants to dismiss the bills for want of equity and jurisdiction, upon the grounds that the suits were for the purpose of enjoining threatened criminal prosecutions by the authorized officers of the State of Tennessee, and were in effect suits against the State, and the application of the complainants for a provisional injunction.   The chancellor

overruled the motion to dismiss, sustained the juris-
diction of the court, and refused to grant an injunction
further than to enjoin the defendants from interfering
with interstate sales and shipments by complainants,
and enjoined J. W. Kelly & Co. from ceasing to do an
interstate business.

The defendants then answered, substantially admit-
ting the facts charged in the complainants' bills, and
the causes were set for hearing on bills and answers.

The chancellor, upon final hearing, sustained the con-
stitutionality of the Sales Act, and held that it prohib-
ited all sales, whether by wholesale or retail, within
four miles of a schoolhouse, except those made for inter-
state shipment, which he held were not prohibited, and
pronounced a decree accordingly, granting a perpetual
injunction against all interferences with sales for ship-
ments to other States and countries.

Complainants and defendants prayed separate ap-
peals to this court and perfected them.

The errors assigned by complainants are these:

"First. The court erred in holding that the selling
of intoxicating liquors at wholesale—that is, sales in
wholesale packages or quantities, and not for consump-
tion at the place of sale—was prohibited by the 'Four-
Mile Act of 1909,' being chapter 1 of the Acts of the
fifty-sixth general assembly of the State of Tennessee.

"Second. The court erred in holding that said act
was not in violation of article 2, section 17, of the consti-
tution of Tennessee: (a) In that the prohibition of the

sales of liquor within four miles of a schoolhouse was not embraced in the title, which prohibits the sale near any schoolhouse, etc.; and (b) in that the wholesaling of liquor is not a sale as a beverage, and, therefore, not expressed in the title; and (c) in that it is in violation of that part of the above section to the effect that: 'All acts which repeal, revise or amend former laws shall recite in their caption, or otherwise, the title or substance of the law repealed, revised or amended.'

"Third. The court erred in holding that said act, as construed by that court, was not in violation of article 1, section 8, of the constitution of Tennessee, and 'the due process of law' clause of the fourteenth amendment to the federal constitution, for that, under the 'Manufacturers Act,' the manufacturer may sell at wholesale till January 1, 1910, while the wholesaler cannot, which discrimination is unreasonable and arbitrary and class legislation.

"Fourth. The court erred in not holding that said 'Four-Mile Act,' as construed, was violative of section 21 of article 1, and section 8 of article 1, of the constitution of Tennessee, and amendment of the federal constitution, and section 1 of the fourteenth amendment of the same."

Those assigned by M. N. Whittaker and S. A. Conner are as follows:

"First. The court erred in overruling the first ground of the motions to dismiss the bills 'for want of equity,' because no ground of equity jurisdiction what-

soever is shown in said bills, and they were filed solely to interfere with and enjoin criminal proceedings which complainants allege they feared were about to be instituted by the defendants as officers charged with the duty of enforcing the criminal laws of the State, and particularly chapter 1 of the Acts of 1909, prohibiting sales of intoxicating liquors as a beverage within four miles of a schoolhouse where school is kept.

"The sole purpose of the bills is to prevent defendants in their official capacity from performing their lawful functions in the execution of chapter 1 of the Acts of 1909, and to take the opinion of the court upon the constitutionality of said act, which is a valid constitutional statute of the State of Tennessee, so that no ground of equitable cognizance is presented in the bills, and they should have been dismissed for want of equity.

"Second. The court erred in not dismissing the bills as to the defendants Whittaker, district attorney for the Sixth judicial circuit, and Conner, sheriff of Hamilton county, because, as to these defendants, said bills were, in effect, suits against the State.

"In order to determine the effect of a suit, the court will look behind the parties named as defendants on the record, and, if the State be affected in the same manner as though it had been named on the record, the suit is in legal effect against the State, and not maintainable. In the enforcement of her criminal laws, the State can only appear in the circuit and criminal courts of the State through and by her district attorneys, and she

can only apprehend and bring before the circuit and criminal courts offenders against her laws by the sheriffs and their deputies, so that to enjoin the district attorney from preferring and prosecuting indictments and the sheriff from making arrests thereunder is in effect to enjoin the State from administering and executing statutes enforceable only in the circuit and criminal courts of the State.

"Third. The court erred in not sustaining the second and fourth grounds of the motions to dismiss the bills, because the court was without jurisdiction of the subject-matter of the bills, and has no power to interfere with the enforcement of the criminal laws of the State.

"The sole purpose of the bills is to enjoin prosecutions, and arrests thereunder, against complainants, as wholesale dealers, for selling intoxicating liquors as beverages in wholesale quantities in violation of chapter 1 of the acts of 1909, and a court of equity in this State has no jurisdiction, either inherently or by statute, to interfere with or enjoin prosecutions for offenses against the criminal laws of the State, which are administered solely in courts having criminal jurisdiction.

"Fourth. The court erred in not sustaining, as to the defendants Whittaker and Conner, the third and fifth grounds of the motions to dismiss the bills, because these defendants are made parties solely in their official capacity, and a court of equity in this State is without jurisdiction to interfere with or control the action of a district attorney in prosecuting indictments or present-

ments for the State, or the sheriff in making arrests under the authority of criminal process issuing in the name and at the instance of the State.

"Fifth.    The court erred in holding and decreeing that chapter 1 of the Acts of 1909 does not prohibit complainants from selling at their places of business in Hamilton county intoxicating liquors to be shipped to customers in other States, and in enjoining the defendants from prosecuting, arresting, or interfering with complainants 'in the selling of such liquors for shipment to other States and territories of the Union or in foreign countries,' and in enjoining 'J. W. Kelly & Co., and its officers and agents, from closing the business of selling intoxicating liquors for shipment out of Tennessee.'

"The act of 1909 (chapter 1), makes unlawful all sales of intoxicating liquors as beverages within four miles of a schoolhouse in Tennessee after July 1, 1909, so that any sale of intoxicating liquors as beverages by the complainants after July 1, 1909, at their respective places of business in Hamilton county, the same being within four miles of a schoolhouse where school is kept, as shown in the bills, would be in violation of the plain terms and provisions of said act. Said act does not seek to interfere with mere shipments of liquors out of the State, and no claim is made by the bills that the defendants, or either of them, sought either to prevent such shipments or claim that complainants had no right to make such shipments; but, even conceding to the

complainants the right to ship their liquors out of the State, such right does not include the right to make a sale thereof at their places of business in Tennessee. "While the learned chancellor does not so state, it is inferable from his holding that he was of the opinion that complainants are, under the commerce clause of the federal constitution, protected in their alleged right to make sales at their places of business in Hamilton county for shipment out of the State. But in such holding he erred, for the reason that the commerce clause of the federal constitution affords no protection to goods sold in the State, and intended to be shipped out of the State, but only protects goods from the time interstate transportation actually begins and until such goods are delivered to the consignee.

"Sixth. The appellant city of Chattanooga specially assigns that the learned chancellor erred in granting any decree whatsoever against it, not only for the reasons above stated, but particularly because no facts whatsoever are averred in the bills entitling complainants to relief against it.

"The sole averment of the bills in any way affecting Chattanooga is that the chief of police and police officers of said city have notified complainants that their officers and agents would be arrested every time any sales were made by such officers and agents contrary to the orders of the attorney-general.

"It is not shown that these police officers of the city of Chattanooga were acting under any authority or in-

structions conferred upon them by the city of Chatta-nooga, or that the city of Chattanooga had taken any cognizance whatsoever, by ordinance or otherwise, of the subject-matter of the Four-Mile Act of 1909, so that any decree against appellant city of Chattanooga was wholly unwarranted.

"Seventh.   The chancellor erred in granting any relief whatsoever in the case of *John H. Conner* v. *J. W. Kelly & Co. et al.*, because the bill in that case is un-known to the forms of a court of equity, in that it is an attempt by a minority stockholder of a corporation to compel the managing officials of such corporation to vi-olate, by continuing sales of intoxicating liquors within four miles of a schoolhouse, a valid, constitutional stat-ute of the State."

The first, second, and third assignments of error of defendants M. N. Whittaker and S. A. Conner challenge the jurisdiction of the chancery court to entertain com-plainants' bills, determine the questions made, and grant the relief prayed.   Therefore these assignments must be first disposed of.

We will first examine the objection raised by the first and third assignments, to the effect that the chancery court has no jurisdiction to enjoin pending or threat-ened prosecutions for violation of the criminal laws of the State.

This proposition, as a rule of general application is unquestionably sound and well established in our juris-prudence.

The several constitutions adopted by this State have all provided for chancery courts and circuit courts, the one courts of equity jurisdiction and the other of common-law jurisdiction. The present constitution, adopted in 1870, further provides that the jurisdiction of the chancery court shall be as then established by law until changed by the legislature. Const., art 6, sections 1, 8; *Jackson* v. *Nimmo*, 3 Lea, 597.

The general assembly of Tennessee (chapter 4, p. 32, Acts 1835), enacted that the chancery courts should continue to have all the powers and jurisdiction properly and rightfully incident to a court of equity by existing laws, and this was carried into our Code enacted in 1858 in section 4279.

When Tennessee was organized into a sovereign State, it adopted all the laws of the State of North Carolina at the time the territory composing it was ceded to the federal government. *Smith* v. *Bank*, 115 Tenn., 18, 89 S. W., 392.

The jurisdiction and procedure of the high court of chancery of England was adopted by North Carolina as the jurisdiction of the chancery court of that State before the cession act, and was therefore adopted in this State when our chancery court was created. This is what is called the "inherent jurisdiction" of the chancery court, and that which has been subsequently vested by the legislature is called the "statutory jurisdiction." Gibson's Suits in Chancery, section 23.

There has been no statute enacted in this State which

confers upon the chancery court the jurisdiction to enjoin criminal prosecutions, and therefore we must look to its original and inherent jurisdiction to determine the question now presented. This must be found in the decisions defining and declaring that jurisdiction of this court, the federal courts, in which this original and inherent jurisdiction was also vested, and in those of other States having similar jurisdiction, and the text-books upon the subject of recognized authority.

The question arose in the case of *Fritz* v. *Sims,* in which the opinion was delivered by the present chief justice, and to be found reported in 122 Tenn., 137, 119 S. W., 63. There, as in the case at bar, the complainant brought his bill to enjoin threatened prosecutions under a statute imposing punishment by fine and imprisonment for its violation, which, as claimed by the officer whose duty it was to enforce it, prohibited the complainant from using and disposing of property to which he asserted title, because, as complainant claimed, the statute upon a proper construction did not apply to his property, and that, if it did, it deprived him of his property without due process of law, impaired the contract under which he held title, and was in contravention of the provisions of the constitutions of Tennessee and of the United States. The statute there in question was the game law of Tennessee, and the property was fish in a lake claimed as private property.

The chief justice, in disposing of the case, said:

"It will thus be seen that the chief, and in fact the

only, purpose of the complainant in the institution of this suit, was to obtain relief by injunction from the annoyance of further prosecutions for assumed violations of this act in question. That the chancery court is without jurisdiction to grant such relief, we think, is well settled by the authorities"—citing 2 Story, Eq., Juris., section 893; 3 Pomeroy, Eq., section 1361, note; 22 Cyc., 903; 16 Am. and Eng. Ency. of Law, 370.

There is no case decided by this court to the contrary or allowing any exception to the rule there stated.

We will however, upon account of the great importance of the case now under consideration, both because of the public interest and the value of the property involved, again examine the question.

The general rule is stated by Mr. Daniell in his work on Chancery Practice and Pleading, at page 1620, thus:

"The court will also refuse an injunction to stay proceedings in any criminal matter. The court has no jurisdiction to grant an injunction to stay proceedings on a *mandamus*, an indictment, an information, or a writ of prohibition."

In Beach's Modern Eq. Pr., vol. 2, section 761, the rule is stated as follows:

"It is the rule of almost universal application, both in England and in this country that a court of equity has no jurisdiction by injunction to restrain a criminal proceeding whether it be by indictment or summary process."

*Suess* v. *Noble* (C. C.), 31 Fed., 855, was a bill to re-

strain by injunction certain State officers of Iowa from enforcing the penal provisions of the prohibition statute of that State.    In denying the application, Judge Love, among other things, said:

"That no such power exists—that its exercise has been denied both in England and this country for centuries—is beyond question. This will be placed beyond all doubt by the authorities cited below.    Whoever will for a moment consider the nature and grounds of equity jurisdiction will not fail to see insuperable objections to the exercise of any restraining power whatever in equity over the course of criminal proceedings. . . .

"Again, public offenses are prosecuted in England in the name of the king, and in the United States in the name of the State.    It is manifest that neither the king nor the State could be made a defendant to a bill in equity.    The restraining power of the court would be futile as against them, and it would avail nothing for the court to address its restraining process to public and private prosecutors, even if the power to do so existed, since the State would readily find other agents to represent it in the criminal proceeding.    Courts of equity, therefore, deal only with civil and property rights.    They have no jurisdiction to give relief in criminal cases, and they will not, therefore, interfere by injunction with the course of criminal justice"—citing *Kerr* v. *Corporation of Preston,* 6 Ch. Div., 463; *Saull* v. *Brown,* 10 Ch. App., 64; *Moses* v. *Mayor,* 52 Ala., 198; *Joseph* v. *Burk,* 46 Ind., 59; *Gault* v. *Wallis,* 53 Ga., 675.

In *Hemsley* v. *Myers,* 45 Fed., 283, 287, Judge Caldwell, of the United States circuit court, in dissolving an injunction restraining threatened criminal prosecutions under the Kansas prohibition statute, which had been granted by the district judge, said:

"The bill seeks to enjoin criminal proceedings. A court of equity possesses no such power. This principle is settled by the uniform current of authorities in England for two centuries, and in this country from the foundation of its jurisprudence. The recent emphatic reaffirmance of the doctrine by the supreme court of the United States renders it unnecessary to do more than repeat the rule in the language of that court."

*In re Sawyer,* 124 U. S., 200, 8 Sup. Ct., 482, 31 L. Ed., 402, the supreme court of the United States, speaking through Mr. Justice Gray, said:

"From long before the Declaration of Independence it has been settled in England that a bill to stay criminal proceedings is not within the jurisdiction of the court of chancery, whether those proceedings are by indictment or by summary process. . . .

"Lord Chancellor Hardwicke, while exercising the power of the court of chancery incidental to the disposition of a case pending before it, of restraining a plaintiff, who had by his bill submitted his rights to its determination, from proceeding as to the same matter before another tribunal, either by indictment or by action, asserted in the strongest terms the want of any power or jurisdiction to entertain a bill for an injunction to

stay criminal proceedings, saying: 'This court has not originally, and strictly, any restraining power over criminal prosecutions.' And again: 'This court has no jurisdiction to grant an injunction to stay proceedings on a *mandamus*, nor to an indictment, nor to an information, nor to a writ of prohibition, that I know of.' *Mayor & Corporation of York* v. *Pilkington*, 2 Atk., 302, s. c., 9 Mod., 273; *Montague* v. *Dudman*, 2 Ves., Sr., 396, 398.

"The modern decisions in England, by eminent equity judges, concur in holding that a court of chancery has no power to restrain criminal proceedings, unless they are instituted by a party to a suit already pending before it, and to try the same right that is in issue there. *Attorney-General* v. *Cleaver*, 18 Ves., 211, 220; *Turner* v. *Turner*, 15 Jurist, 218; *Saull* v. *Browne*, L. R., 10 Ch., 64; *Kerr* v. *Preston*, 6 Ch. D., 463.

"Mr. Justice Story, in his Commentaries on Equity Jurisprudence, affirms the same doctrine. Story, Eq. Jur., section 893. And in the American courts, so far as we are informed, it has been strictly and uniformly upheld, and has been applied alike whether the prosecutions or arrests sought to be restrained arose under statutes of the State or under municipal ordinances"— citing *West* v. *Mayor, etc., of New York*, 10 Paige (N. Y.), 539; *Davis* v. *American Society for Prevention of Cruelty to Animals*, 75 N. Y., 362; *Tyler* v. *Hamersley*, 44 Conn., 419, 422, 26 Am. Rep., 479; *Stuart* v. *Board of Supervisors*, 83 Ill., 341, 25 Am. Rep., 397; *Devron* v.

*First Municipality,* 4 La. Ann., 11; *Levy* v. *Shreveport,* 27 La. Ann., 620; *Moses* v. *Mayor, etc., of Mobile,* 52 Ala., 198; *Gault* v. *Wallis,* 53 Ga., 675; *Phillips* v. *Mayor, etc., of Stone Mountain,* 61 Ga., 386; *Cohen* v. *Goldsboro Commissioners,* 77 N. C., 2; *Waters-Pierce Oil Co.* v. *Little Rock,* 39 Ark., 412; *Spink* v. *Francis* (C. C.), 19 Fed., 670, and (C. C.), 20 Fed., 567; *Suess* v. *Noble* (C. C.), 31 Fed., 855.

The authority of this case is questioned upon the ground that the exact point was not involved; but it has been, from the time the opinion was delivered, recognized as correctly defining the jurisdiction of courts of equity in this matter, and has been approved and followed in numerous cases decided by the courts of the United States and of many of the States, and the objection for these reasons is without force.

In *Brown* v. *Birmingham,* 140 Ala., 600, 601, 37 South., 173, 174, the supreme court of Alabama, speaking through Chief Justice McClellan, in dismissing a bill of this character, said:

"But apart from all these considerations—or looking to them only as some of the reasons underlying the broad proposition now to be announced—the general rule is that the chancery court is wholly without jurisdiction to enjoin such quasi criminal prosecutions, however great and irreparable the damages to result from them to the party complaining may in fact be. It is not the sort of case in which the court can interfere, though the consequences to the complainant of allowing the

prosecutions to proceed may be ever so grievous and ir-
reparable.   This statement of the doctrine includes of
necessity and leads to the proposition that the insol-
vency of the municipality under the supposed authority
of which the prosecutions are to be instituted, and of its
officers proceeding therein, is altogether, immaterial.
The administration of State and municipal govern-
ments, in the prosecutions of alleged violators of their
penal laws or of violators of their supposed criminal
laws, must be left to take its own course in the courts
ordained to administer those laws, unhindered by the
courts of equity, whose activities are in general strictly
confined to matters of a purely civil nature; and this
though such administration may wrongfully entail dam-
ages upon the citizens which are grievous indeed, and
beyond all remedy, either because in their nature ir-
reparable or because he is balked of their recovery by
the insolvency of those responsible for the prosecutions.
There are, it is true, some so-called exceptions to the
general rule we have stated; that is, there are some
cases in which prosecutions for alleged violations of pe-
nal ordinances may be enjoined.   But it would perhaps
be more apt to say that injunctions in such cases may
be granted as incidental and ancillary to the exercise
of some acknowledged equity jurisdiction, resting up-
on other bases than the mere harassment of prosecu-
tions under void ordinances, than that the cases form
an exception to the general rule."

There are numerous other cases in which the rule

as stated has been announced and jurisdiction denied, among which are, viz.:  *Cohen* v. *Commissioners of Goldsboro,* 77 N. C., 2; *Wardens* v. *Washington,* 109 N. C., 21, 13 S. E., 700; *Scott* v. *Smith,* 121 N. C., 95, 28 S. E., 64; *Ewing* v. *Webster City,* 103 Iowa, 226, 72 N. W., 511; *Greiner-Kelley Drug Co.* v. *Truett,* 97 Tex., 377, 79 S. W., 4; *City of Bainbridge* v. *Reynolds,* 111 Ga., 759, 36 S. E., 935; *Paulk* v. *Mayor,* 104 Ga., 24, 30 S. E., 417, 41 L. R. A., 772, 69 Am. St. Rep., 128; *Crighton* v. *Dahmer,* 70 Miss., 602, 13 South., 237, 21 L. R. A., 84, 35 Am. St. Rep., 666; *Whitmore* v. *Mayor,* 67 N. Y., 27; *Boin* v. *Jennings,* 107 La., 410, 31 South., 866; *Thompson* v. *Tucker,* 15 Okl., 486, 83 Pac., 413; *Rhodes & Jacobs Mfg. Co.* v. *New Hampshire* (C. C.), 70 Fed., 721; *Arbuckle* v. *Blackburn,* 113 Fed., 617, 51 C. C. A., 122, 65 L. R. A., 864; *Burnett* v. *Craig,* 30 Ala., 135, 68 Am. Dec., 115.

There are also other authorities of high character, which, while conceding the general rule to be that the jurisdiction of courts of equity is confined and limited to civil and property rights, hold that there are well-defined and established exceptions to it, one of which is that, when these rights are wrongfully affected and injured by an invalid criminal law, courts of equity have the power to, and will, under certain conditions and circumstances, enjoin prosecutions for violations of the law, to protect and preserve such rights and property and prevent loss and irreparable injury that would otherwise follow.

Kelly v. Conner.

Lord Justice Turner, in *Emperor of Austria* v. *Day and Kossuth,* 3 De Gex, F. & J., 253, said:

"But it is said that the acts proposed to be done are not the subject of equitable jurisdiction, or that, if they are, the jurisdiction ought not to be exercised until a trial at law shall have been had. To neither of these propositions can I give my assent. I agree that the jurisdiction of this court in a case of this nature rests upon injury to property, actual or prospective, and that this court has no jurisdiction to prevent the commission of acts which are merely criminal or merely illegal, and do not affect any rights of property; but I think there are here rights of property quite sufficient to found jurisdiction in this court."

The case of *Louisiana State Lottery* v. *Fitzpatrick et als.,* 3 Woods, 222, Fed. Cas. No. 8541 (15 Fed. Cas., 871), involved this question. The Louisiana State Lottery was organized under a statute of Louisiana in the year 1868 (Act No. 25, p. 24, of 1868). It built up an enormous business and its franchises were extremely valuable. In April, 1879, the legislature of that State *repealed the act incorporating the company, and made it a misdemeanor,* punishable by fine and imprisonment, for any one thereafter to engage in the lottery business. Thereupon the lottery company filed a bill against the city of New Orleans, enjoining all prosecutions under this act, on the ground that it impaired the contract entered into between the company and the State.

The court said:

122 Tenn—24

"Writers on equity jurisdiction properly say that the court of chancery does not deal with matters of crime, misdemeanors, offenses against prohibitory laws, nor questions of mere morality. But there is this reservation: That it is only when those matters are not connected with the rights of property with respect to which the court has jurisdiction. *Attorney-General* v. *Cleaver*, 18 Ves., 211. In *Macauley* v. *Shacknell*, 1 Bligh (N. S.), 6 Eq., 558, the vice chancellor says: 'The jurisdiction of this court is to protect property, and it will interfere by injunction to stay any proceedings, whether connected with the crime or not, which go to the immediate, or tend to the ultimate, destruction of property, or to make it less valuable for use or occupation.' "

The case of *Logan & Bryan* v. *Postal Telegraph Co.* (C. C.), 157 Fed., 574, was to enjoin the "bucket shop" law of Kansas. It is there said:

"That a court of equity has no power to restrain criminal proceedings, with few exceptions, is the established rule in England as well as in the courts of the United States"—citing Sawyer Case, and others. "The exceptions are where the equity proceedings are instituted by a party in the suit already pending before the court, and are in the nature of ancillary proceedings, or where the complainant had acquired property rights, which, by the enforcement of the criminal laws enacted thereafter, would be destroyed and rendered worthless."

In *Dobbins* v. *Los Angeles*, 195 U. S., 241, 25 Sup.

Ct., 22 (49 L. Ed., 169), where the city passed an ordinance prohibiting the erection of gas works within certain limits, after having given complainant authority to erect works within those limits, and fixing penalties for infraction of the ordinance, a bill was filed to enjoin the enforcement of the ordinance, to which a demurrer for want of jurisdiction was filed, and sustained by the lower court. Justice Day in rendering the opinion of the supreme court, reversing the lower court, said:

"It is well settled that, where property rights will be destroyed, unlawful interference by criminal proceedings under a void law or ordinance may be reached and controlled by a decree of a court of equity."

Complainants also cite, as sustaining their position, the cases of *Ignaz* v. *Knoxville*, 1 Tenn. Ch. App., 5; *Trading Stamp Co.* v. *Memphis*, 101 Tenn., 181, 47 S. W., 136; *Reagan* v. *Farmers' Loan & Trust Co.*, 154 U. S., 388, 14 Sup. Ct., 1047, 38 L. Ed., 1014, *Smyth* v. *Ames*, 169 U. S., 542, 18 Sup. Ct., 418, 42 L. Ed., 819; *Davis & F. Mfg. Co.* v. *Los Angeles*, 189 U. S., 220, 23 Sup. Ct., 498, 47 L. Ed., 778, *Vance* v. *Vandercock*, 170 U. S., 438, 18 Sup. Ct., 674, 42 L. Ed., 1100; *Ex parte Young*, 209 U. S., 159, 28 Sup. Ct., 441, 52 L. Ed., 714, 13 L. R. A. (N. S.), 932, and a number of others, to all of which we will hereafter refer.

While there is not as great a conflict in the authorities upon this question as seemingly appears from the excerpts quoted, some does exist, growing, doubtless,

out of the unequal development and extension in this country of the inherent jurisdiction of courts of equity, by judicial decision and statutory enactment. This was to some extent made necessary in the federal courts by our dual system of government and the new and complicated conditions with which those courts have been called upon to deal. And it would be remarkable if a harmonious and uniform rule had been adhered to in all these independent jurisdictions for more than one hundred years.

We are dealing solely with the jurisdiction of the chancery court of this State. There may be cases involving civil and property rights, where courts of equity have power to enjoin threatened criminal proceedings, under invalid statutes and ordinances, injuriously affecting those rights, when it is absolutely necessary to protect the jurisdiction of the court over the property. We refer to cases where the court has jurisdiction of the property upon some acknowledged ground of equity jurisdiction, and the injunction is merely incidental and ancillary, in order to preserve that jurisdiction and make it effective. Whether this be so or not, we are not now called upon to decide, as no such case is presented in this record.

Complainants' contention is that an exception to the general rule exists in all cases where civil and property rights are involved, and a multiplicity of prosecutions under an invalid statute will greatly injure and ultimately destroy those rights, resulting in irreparable

loss, and that the case presented by them is one of that character. We will only determine whether there is an exception which will authorize a chancery court of this State to exercise the jurisdiction and grant the relief sought, as against a statute of the character of the one here attacked, and upon the facts appearing in this record.

We will first examine the statute charged to be invalid, and the case upon which the complainants seek to enjoin the defendants from enforcing it.

This act was passed by the general assembly in the exercise of the police power vested in the State. If it is within the police power, the legislature had plenary power to deal with the subject-matter. There is no doubt now but what the regulation and prohibition of the sale of intoxicating liquor is within the police power of the several States, provided there is no interference with interstate commerce.

In *Webster* v. *State,* 110 Tenn., 504, 82 S. W., 182, Mr. Justice Wilkes, speaking for this court, said:

"The traffic in intoxicating liquors is universally recognized as a proper subject for police regulation, and may be controlled, restricted, or even totally prohibited, without violating any constitutional right under the police power. 22 Am. and Eng. Ency. Law (2d Ed.), p. 927, and cases cited; *Boston Beer Company* v. *Massachusetts,* 97 U. S., 25, 24 L. Ed., 989; *Bartemeyer* v. *Iowa,* 18 Wall., 129, 21 L. Ed., 929; *Mugler* v. *Kansas,* 123 U. S., 623, 8 Sup. Ct., 273, 31 L. Ed., 205.

"The regulation, restriction, and even prohibition of the liquor traffic being clearly within the police power of the State, it is for the legislature to decide when the exigency exists for the exercise of that power, and its exercise is not to be controlled by the courts. *Powell* v. *Pennsylvania,* 127 U. S., 683, 8 Sup. Ct., 992, 32 L. Ed., 253 (Rose's Notes)."

And as bearing upon the validity and extent of legislation upon this subject, in the same opinion, it is said:

"And the exercise of this power with respect to the manufacture and sale of intoxicating liquors, even to the extent of abolishing them, is not a denial of an equal protection of the law, nor a violation of the fourteenth amendment to the constitution of the United States."

The case of *Mugler* v. *Kansas,* 123 U. S., 623, 8 Sup. Ct., 273, 31 L. Ed., 205, in which the validity of the Kansas prohibition law is sustained, is a leading case upon these questions. We quote from the syllabus, which correctly states the holding of the court:

"Legislation by a State prohibiting the manufacture within her limits of intoxicating liquors, to be there sold or bartered for general use as a beverage, does not necessarily infringe any right, privilege, or immunity secured by the constitution of the United States.

"It belongs to the legislative department to exert what are known as the 'police powers' of the State, and to determine, primarily, what measures are appropriate

or needful for the protection of the public morals, the public health, or the public safety—subject to the power of the courts to adjudge whether any particular law is an invasion of rights secured by the constitution.

"Government does not interfere with, nor impair, any one's constitutional rights of liberty or of property, when it determines that the manufacture and sale of intoxicating drinks, for general or individual use, as a beverage, are or may become hurtful to society, and constitute, therefore, a business in which no one may lawfully engage."

And in the opinion Mr. Justice Harlan says:

"If, therefore, a State deems the absolute prohibition of the manufacture and sale, within her limits, of intoxicating liquors for other than medicinal, scientific, and manufacturing purposes, to be necessary to the peace and security of society, the courts cannot, without usurping legislative functions, override the will of the people as thus expressed by their chosen representatives. They have nothing to do with the mere policy of legislation. Indeed, it is a fundamental principle in our institutions, indispensable to the preservation of public liberty, that one of the separate departments of government shall not usurp powers committed by the constitution to another department."

This statute is purely a police measure of general application. It has no special reference to complainants or their property. It does not invade or appropriate property, nor in any way affect the title or in-

terfere with the possession of the owners. It does not impair the obligation of contracts.

Complainants' case, presented in their bill, is that, when properly construed, the statute does not apply to them and their business as wholesale dealers, but, if it does, it is invalid, and that, notwithstanding its inapplicability and invalidity, the officers of the State, whose duty it is to enforce criminal laws, are threatening them with prosecutions so numerous that, should they be mistaken in their positions, the excessive fines that may be adjudged against them would practically bankrupt them, and that for this reason, and the fear of their employees of arrest, fine, and imprisonment, they are deterred and prevented from carrying on and conducting their business and from selling their property as they have the right to do, if the statute does not prohibit wholesaling or is unconstitutional for any of the reasons charged; and their contention that civil and property rights are involved is predicated upon the charge that the value of their property—the whisky and beer owned by them—consists in its salability, and that the threatened prosecutions under the law, by deterring them from making sales, destroy this value, and the use and enjoyment of the property.

When reduced to its last analysis, their suit is simply one to enjoin the officers of the State from prosecuting them for pursuing a business, made unlawful by a statute enacted in the exercise of the police power, until they can have it construed, and its validity or

invalidity determined, by the chancery court, instead of by that court created for the purpose of administering it and all other criminal laws. Have the chancery courts of this State jurisdiction to entertain a bill for this purpose?

We think not.

We do not think the cases relied upon by complainants, when analyzed, and the special facts and circumstances thereof are considered, support their contention that courts of equity have such jurisdiction.

We will now briefly examine those cases.

The case of *Ignaz* v. *Knoxville,* supra, was a bill to enjoin the city of Knoxville from collecting a privilege tax in excess of its municipal powers. The decision of the court of chancery appeals was rested upon the authority of *Trading Stamp Company* v. *Memphis.* While it was affirmed by this court, it does not appear whether it was upon this ground or not. The case of *Trading Stamp Company* v. *Memphis,* supra, does not sustain that decision. That was a bill to enjoin the legislative council of the city of Memphis from passing an ordinance which was in excess of the authority vested in that municipality and *ultra vires,* and not to enjoin prosecutions under an existing ordinance. Again, these were not criminal, but civil, actions. They are, therefore, not in point here.

*Austin* v. *Day* and *Kossuth,* supra, and *Springhead Spinning Company* v. *Riley,* L. R., 6 Eq., 558, English cases, were suits, not to enjoin a criminal prosecution, but the commission of crimes, which invaded property

rights.    While the principle involved is analogous, these cases are not authority for the present contention. Notwithstanding this, these cases are cited in a number of other cases relied upon by complainants as authority.

*Schandler Bottling Company* v. *Welsh* (C. C.), 42 Fed., 563, is an opinion delivered by the district judge in granting a preliminary injunction, and exactly the contrary was held by the circuit judge upon a motion to dissolve the injunction; the case being heard for this purpose with that of *Hemsley* v. *Myers.*

The question is not raised or decided in the case of *Vance* v. *Vandercock.*

*Reagan* v. *Farmers' Loan & Trust Company, Smyth* v. *Ames,* and *Perkins* v. *Northern Pacific Ry. Co.* (C. C.), 155 Fed., 445, under proceedings in which the case of *Ex parte Young* arose, and which is hereafter referred to under the latter style, were bills brought by trustees for bondholders and the stockholders of railroad companies to enjoin the enforcement of tariff rates, fixed in two of the cases by the general assemblies of Nebraska, and Minnesota, and in the other by the railroad commissioners of Texas under a statute of that State, upon the ground that they were unreasonable and confiscatory, and denied to the railroad companies the equal protection and due process of law. The chief question of jurisdiction in these cases was whether the suits were actions against the several States; but injunctions were granted restraining suits

in the State courts for penalties and crimes denounced for violation of the rates fixed, as ancillary to the relief which was the gravamen of the bills. Here property rights were directly involved. The right to charge reasonable tariff rates was the most valuable franchise of the railroad companies, and their very existence depended upon their right to exercise it. The statute fixing the rate so low as to be confiscatory directly invaded and destroyed this right. The question involved, and which the bills were brought to have determined, the reasonableness of the tariff rates fixed, was not one over which the general assembly had complete jurisdiction, as in ordinary police measures, but, as was held in all of these cases, one of a judicial nature. In other words, while the legislature has the right to fix tariff rates, the determination of whether they are reasonable or confiscatory is one vested in the courts. The railroad companies were also great quasi public corporations, charged with duties to the public which involved transactions daily with thousands of people, which they could not refuse to perform without danger of forfeiture of their corporate franchises and a multiplicity of civil and criminal actions. Their defense in both classes of actions involved complicated accounts and difficult computations, which could only be made by skillful experts and according to the practice of courts of equity, and, therefore, their defense at law was greatly embarrassed and wholly inadequate. These were the real grounds upon which

the equitable jurisdiction was sustained, and the injunctive relief granted was only incidental and ancillary, to protect the property of which the court had assumed jurisdiction, and enable it to give full and complete relief. Without the aid of an injunction in these cases, the railroad companies would have been compelled to put in effect the confiscatory rates pending the decision of the federal courts upon their validity, and would thus have been compelled to render service without compensation, and part with property involved in the litigation without any adequate remedy for recovery. This would have been irreparable injury. These cases also involve questions arising under the constitution of the United States, to determine which the complainants had the right to invoke the jurisdiction of the federal courts, and that jurisdiction would have availed nothing if the property, in the meantime, could be greatly depreciated in value and destroyed by proceedings instituted in the State courts. These reasons for sustaining jurisdiction in those cases fully appear from the opinions delivered, especially in *Smyth* v. *Ames* and *Ex parte Young*. In the latter case the jurisdiction is also put upon the ground that the proceeding in the State court was begun subsequent to that in the federal court. In that case, on page 161 of 209 U. S., page 454 of 28 Sup. Ct. (52 L. Ed., 714, 13 L. R. A. [N. S.], 932), it is said:

"It is further objected (and the objection really forms part of the contention that the State cannot be

sued) that a court of equity has no jurisdiction to enjoin criminal proceedings, by indictment or otherwise, under the State law. This, as a general rule is true. But there are exceptions. When such indictment or proceeding is brought to enforce an alleged unconstitutional statute, which is the subject-matter of inquiry in a suit already pending in a federal court, the latter court, having first obtained jurisdiction over the subject-matter, has the right, in both civil and criminal cases, to hold and maintain such jurisdiction, to the exclusion of all other courts, until its duty is fully performed. *Prout* v. *Starr,* 188 U. S., 537, 544, 23 Sup. Ct., 398, 47 L. Ed., 584. But the federal court cannot, of course, interfere in a case where the proceedings were already pending in a State court. *Taylor* v. *Taintor,* 16 Wall., 366, 370, 21 L. Ed., 287; *Harkrader* v. *Wadley,* 172 U. S., 148, 19 Sup. Ct., 119, 43 L. Ed., 399.

"Where one commences a criminal proceeding who is already a party to a suit then pending in a court of equity, if the criminal proceedings are brought to enforce the same right that is in issue before that court, the latter may enjoin such criminal proceedings. *Davis, etc., Co.* v. *Los Angeles,* 189 U. S., 207, 23 Sup. Ct., 498, 47 L. Ed., 778.    In *Dobbins* v. *Los Angeles,* 195 U. S., 223, 241, 25 Sup. Ct., 18, 22 (49 L. Ed., 169), it is remarked by Mr. Justice Day, in delivering the opinion of the court, that 'it is well settled that, where property rights will be destroyed, unlawful interference by criminal proceedings under a void law or ordi-

nance may be reached and controlled by a court of equity.' *Smyth* v. *Ames,* supra, distinctly enjoined the proceedings by indictment to compel obedience to the rate act.

"These cases show that a court of equity is not always precluded from granting an injunction to stay proceedings in criminal cases, and we have no doubt the principle applies in a case such as the present. *In re Sawyer,* 124 U. S., 200, 211, 8 Sup. Ct., 482, 31 L. Ed., 402, is not to the contrary. That case holds that in general a court of equity has no jurisdiction of a bill to stay criminal proceedings; but it expressly states an exception, 'unless they are instituted by a party to the suit pending before it and to try the same right that is in issue there.' Various authorities are cited to sustain the exception. The criminal proceedings here that could be commenced by the State authorities would be under the statutes relating to passenger or freight rates, and their validity is the very question involved in the suit in the United States circuit court. The right to restrain proceedings by *mandamus* is based upon the same foundation and governed by the same principles."

And on page 166 of 209 U. S., page 456 of 28 Sup. Ct. (52 L. Ed., 714, 13 L. R. A. [N. S.], 932), it is further said:

"Such remedy is undoubtedly the most convenient, the most comprehensive, and the most orderly way in which the rights of all the parties can be properly,

fairly, and adequately passed upon. It cannot be to the real interest of any one to injure or cripple the resources of the railroad companies of the country, because the prosperity of both the railroads and the country is most intimately connected. The question of sufficiency of rates is important and controlling, and, being of a judicial nature, it ought to be settled at the earliest moment by some court, and when a federal court first obtains jurisdiction it ought, on general principles of jurisprudence, to be permitted to finish the inquiry and make a conclusive judgment, to the exclusion of all other courts. This is all that is claimed, and this, we think, must be admitted."

This case also decides that excessive fines and punishment, so great as to deter a party from rendering himself liable therefor, may be a denial of due process, and ground for federal jurisdiction, but does not hold it is a ground of equitable jurisdiction.

*Central Trust Company* v. *Citizens' Street Ry. Co.* (C. C.), 80 Fed., 219, was also a tariff rate case. The statute in question reduced the rates and diminished the value of the corporate franchises of the street railway company, and thus directly involved property. What we have said in relation to the railroad cases above discussed applies to this case.

The cases of *City of Atlanta* v. *Gate City Gaslight Company*, 71 Ga., 106, and *Port of Mobile* v. *Railroad Company*, 84 Ala., 125, 4 South., 106, 5 Am. St. Rep., 342, involved ordinances which were effective, or being

so enforced, to destroy corporate rights and franchises These were property rights which were being unlawfully invaded and destroyed, and the suits were for their protection and preservation. Attention is called to the fact that in other cases decided by the courts of last resort in both Georgia and Alabama, involving statutes and ordinances of the character here under consideration, the jurisdiction was denied.

The case of *Louisiana State Lottery Company* v. *Fitzpatrick* has been stated. The repealing act destroyed the franchise of the complainant, upon which its very existence depended, and violated the contract made between it and the State. Therefore it directly affected property rights and operated to absolutely destroy them.

*Austin* v. *Austin Cemetery,* 87 Tex., 330, 28 S. W., 528, 47 Am. St. Rep., 114, was a suit brought to enjoin an invalid ordinance prohibiting burials in a cemetery belonging to complainants under severe penalties. The jurisdiction to enjoin the city from enforcing the penalties was sustained; but in the case of *Wardens* v. *Washington,* 109 N. C., 21, 13 S. E., 700, seeking similar relief against a like ordinance, jurisdiction was denied. The latter case, for well-known reasons, is more persuasive than the former in the courts of this State.

The cases of *Davis & Farnum Mfg. Co.* v. *Los Angeles,* 189 U. S., 207, 23 Sup. Ct., 498, 47 L. Ed., 778,

Kelly v. Conner.

and *Dobbins* v. *Los Angeles,* 195 U. S., 241, 25 Sup.
Ct., 18, 49 L. Ed., 169, involved the same facts and the
same invalid city ordinance. Mrs. Dobbins had obtain-
ed a permit from the city to erect gas works in territory
where the same were allowed, and contracted with a
company for the erection of the works, and expended
considerable money in that way. The city then passed
an ordinance prohibiting the erection of such works
in that territory under certain penalties. Davis & Far-
num Manufacturing Company, who had contracted to
do part of the construction, brought their bill to have
the ordinance declared void, and the city enjoined from
bringing a multiplicity of suits against it for continu-
ing the work. When the case reached the supreme
court of the United States, it was held that the ordi-
nance was arbitrary and discriminatory, and impaired
the obligation of the city's contract with Mrs. Dobbins;
and it is there said that in such cases the federal courts
of equity could maintain a bill to adjudge the invalidity
of the ordinance and enjoin a multiplicity of suits for
its violation. But the complainant's bill was dismissed
because no case of irreparable damage was shown. Mrs.
Dobbins brought her bill in the circuit court of the
United States upon the same facts, and to obtain the
same relief, and it was sustained upon the authority
of the former case.

These cases are criticised in *Camden Interstate Rail-
way Co.* v. *Catlettsburg* (C. C.), 129 Fed., 427, and
*Logan & Bryan* v. *Postal Telegraph Co.* (C. C.), 157

122 Tenn—25

Fed., 574, and the ruling said to be confined to the special facts presented.  The property of Mrs. Dobbins was evidently intentionally discriminated against, with the purpose of destroying it, and was of such character, and in such condition, that its value would have been destroyed, but for the intervention of a court of equity. That is not the case at bar.

*N. O. Baseball & Amusement Co.* v. *New Orleans,* 118 La., 228, 42 South., 784, 7 L. R. A. (N. S.), 1014, 118 Am. St. Rep., 366, is a bill brought to enjoin an ordinance of the city of New Orleans prohibiting the establishment and operation of a baseball park within certain territorial limits, with penalties for its violation. The complainant, before the passage of the ordinance, had purchased property in that territory costing $40,- 000 for a ball park, and it brought its bill, charging that the ordinance was invalid upon the ground that it was deprived of its property without due process of law, and impaired property rights protected by the federal constitution.  The supreme court of Louisiana, after referring to the cases decided by it holding that courts of equity had no such jurisdiction, sustained the bill upon the authority of *Dobbins* v. *Los Angeles,* because a federal question was involved.  We do not understand why the court understood that the *Dobbins Case* was controlling, rather than those determined by it in defining the jurisdiction of the courts of the State.

*Fellows* v. *Charleston,* 62 W. Va., 665, 59 S. E., 623, 13 L. R. A. (N. S.), 737, 125 Am. St. Rep., 990, in-

volved an invalid municipal ordinance prohibiting the
erection of buildings without a permit under penalties.
Complainant's bill to have the ordinance declared void
and enjoin prosecutions under it, upon the ground that
it unlawfully deprived him of the use of his property,
was sustained upon the authority of *Dobbins* v. *Los
Angeles*.

· *Greenwich Ins. Co.* v. *Carroll* (C. C.), 125 Fed., 121,
was a bill attacking as invalid a statute of Iowa regu-
lating insurance companies, and to enjoin criminal pros-
ecutions for violations of it.   District Judge McPher-
son, upon demurrer, held that it could be sustained.
This case is perhaps more in point than any other re-
lied upon by complainants, and does sustain their con-
tention.

· *Hutchinson* v. *Beckham*, 118 Fed., 399, 55 C. C. A.,
333, and *Southern Exp. Co.* v. *Mayor of Ensley* (C. C.),
116 Fed., 756, were bills filed to obtain a definite de-
termination of the validity of ordinances imposing li-·
cense taxes upon the complainants, and to establish
complainants' right to do business in the cities enact-
ing the ordinances, and enjoin vexatious litigation for
penalties imposed.   These cases, like a large number of
the others relied upon by complainants, involved mu-
nicipal ordinances, suits for penalties under which were
enjoined, and have no bearing on the case at bar.  Pen-
alties denounced by municipal ordinances are not
crimes or misdemeanors, and actions to recover them
are not criminal, but civil, in their nature.   This was

expressly held in the case of *Southern Express Co.* v. *Mayor of Ensley.* It is there said:

"A license imposed for revenue is the exercise of the taxing, not the police, power, and prosecutions before the corporate tribunal for doing the business without a license are quasi penal at most. In substance and legal effect, they are civil proceedings. *Royall* v. *Virginia,* 116 U. S., 583, 6 Sup. Ct., 510, 29 L. Ed., 735. The 'offense' here, if there is any law to support it, does not in any wise interfere with the control of the local tribunals over the mass of governmental powers committed to them for the welfare of the people of Ensley under what, for want of a better name, we denominate the 'police power.' It is about prosecutions for offenses under ordinances directed solely to that end that many of the authorities are strict in holding that courts of equity must not interfere."

In *Camden Interstate Railway Co.* v. *Catlettsburg,* supra, after discussing cases in which an injunction will be granted to restrain criminal prosecutions where property rights are involved, this is said:

"Likewise that line of cases must be distinguished from those which uphold the right of a court of equity to enjoin proceedings to enforce payment of penalties prescribed for nonpayment of taxes or license fees that are illegal on the ground that thereby multiplicity of suits is prevented. Such proceedings are civil in their nature."

In the case of *Royall* v. *Virginia,* 116 U. S., 572, 6

Kelly v. Conner.

Sup. Ct., 510, 29 L. Ed., 735, Mr. Justice Matthews said:

"As the sum demanded for the license is a tax, the provision for the punishment of one who pursues his profession without a license is a part of the revenue system of the State, and is a means merely of enforcing payment of the tax itself, or of a penalty for not paying it. It is legally equivalent to a civil action of debt upon the statute, and its substantial character is not changed by calling the default a misdemeanor, and providing for its prosecution by information. The present case, therefore, stands precisely, so far as the constitutional questions arising in it are affected, as if it were a civil action in which the commonwealth of Virginia was plaintiff, seeking to recover the amount due on account of the tax and penalty."

*Sylvester Coal Co.* v. *St. Louis,* 130 Mo., 323, 32 S. W., 649, 51 Am. St. Rep., 566, a bill to enjoin penal actions under a municipal ordinance, is to the same effect. It is there said:

"The doctrine that the criminal statutes cannot be tested, or their enforcement restrained, in the civil courts has no application to the case. Municipal statutes: *Kansas* v. *Clark,* 68 Mo., 588; *Ex parte Hollwedell,* 74 Mo., 395; *St. Louis* v. *Marchel,* 99 Mo., 475, 12 S. W., 1050. They are quasi criminal in form, but not so regarded in procedure.

"We think the petition presents a case in which the validity of the ordinances may be inquired into by a

court of equity, and, if found to be invalid, the relief prayed for may be granted."

This is well settled in Tennessee, and all such actions are held to be civil, and not criminal, cases, and they need not be begun by presentment or indictment. *Meaher* v. *Chattanooga*, 1 Head, 75; *Bristol* v. *Burrow*, 5 Lea, 128; *Wood* v. *Mayor*, 5 Heisk., 441; *O'Haver* v. *Montgomery*, 120 Tenn., 448, 111 S. W., 449.

While some of the cases discussed support complainants' contention, the majority of them do not; the jurisdiction of the court being sustained upon some well-established ground of equity jurisdiction, and upon facts and circumstances which are not present in this case, and the injunctive relief being merely incidental and ancillary. Many of them were also suits against municipal corporations, which can be sued, and the proceedings enjoined were merely civil actions. For these reasons, they are not applicable or authority in this case.

We will not review at length the cases holding that the jurisdiction does not exist.

The majority of them were bills brought to enjoin prosecutions under statutes and ordinances, alleged to be illegal, in which the complainants claimed that, without injunctive relief, in their business and property they would suffer great and irreparable injury, and were remediless save in a court of equity, and are directly in point here. Those of *Suess* v. *Noble, Hemsley* v. *Myers, Paulk* v. *Mayor, Burnett* v. *Craig, Thompson* v.

*Tucker,* and *Boin* v. *Jennings* were brought to enjoin prosecutions under laws and ordinances enacted in the States of Kansas, Iowa, Alabama, Georgia, Oklahoma, and Louisiana, in the exercise of the police power, to prohibit sales of intoxicants, alleged to be invalid, and in all of them jurisdiction was denied. It is true that some of these cases were bills filed to enjoin the enforcement of ordinances, but that only makes the case of the defendants stronger. They extend the rule further than defendants are here claiming it to be. The property which the complainants in the cases we are now discussing charged would be injured and destroyed was less valuable than that owned by complainants in this case; but the principle was and is the same. There must be one law for the rich and the poor. If complainants' bill could be sustained, every owner of a saloon would have the right to the same remedy, although his property, instead of being of the value of thousands of dollars, was that of only a few hundred; and it cannot with reason be insisted that every one who would suffer a small injury from the operation of a police measure can stay the enforcement of the law until he can have its validity, or applicability to his case, inquired into in a court of equity.

Courts of equity are not constituted to deal with crime and criminal proceedings. If the law be held valid, they cannot punish the complainant for the offenses committed, or compensate those injured by his wrongful action while the hands of the officers of the

law are stayed by injunction. The exercise of the jurisdiction contended for would greatly confuse and embarrass the enforcement of· the police power, and, upon sound principles of public policy, it ought not to be favored.

The case of *Poyer* v. *Des Plaines*, 123 Ill., 111, 13 N. E., 819, 5 Am. St. Rep., 494, involved an ordinance alleged to be invalid, and suits for penalties under it were sought to be enjoined. The court said:

"If the authorities of this village can be enjoined from prosecuting under an ordinance preservative of the peace (as this one certainly is), so they might be restrained from the enforcement of any other ordinance of the village. Their effort to discharge their duty to the public would be rendered unavailing, and the community left at the mercy of the lawless and vicious elements of society until such time as the question could be settled in the court of equity. If it should at last be determined that the ordinance was valid, that court would be powerless to enforce its provisions or impose the penalties denounced against its violation, but must remit the cases to the courts of law, which, before the assumption of jurisdiction by the courts of equity, had the right to determine every question submitted and determined in the equity jurisdiction."

In *Denver* v. *Beede*, 25 Colo., 172, 54 Pac., 624, a bill was brought to enjoin suits for penalties imposed by an ordinance, charged to be void; and, in holding that the chancery court had no jurisdiction to entertain it, it is said:

"The fallacy of granting a writ of injunction in cases of this character on the facts detailed by appellee in his bill is quite evident.  If the question of the validity of the ordinance was before us for determination, and we should decide in favor of its legality, yet, notwithstanding appellee admits its violation, no judgment could be pronounced or directed against him therefor in this case; and hence the necessity of applying the rule strictly that equity will not interfere with the prosecution of actions at law, except in cases where the applicant for such relief brings himself clearly within its purview.  The object of the ordinances imposing penalties for specific acts, is to protect and preserve the peace and good order of the corporate community, as criminal proceedings are intended for the preservation of the peace and dignity of the State; and if every offender against such ordinances could invoke the interposition of a court of equity against their enforcement, by charging illegality, or by multiplying his offenses, municipal authorities would be paralyzed in discharging the public duties intrusted to them."

Without doubt, courts of equity have no jurisdiction to entertain a bill to construe a valid criminal statute, and pending the proceeding or at its termination, enjoin prosecutions for violations of it.  *Insurance Co.* v. *Craig,* 106 Tenn., 641, 62 S. W., 155; *Greiner-Kelley Drug Co.* v. *Truett,* 97 Tex., 380, 79 S. W., 4; *Arbuckle* v. *Blackburn,* 113 Fed., 625, 51 C. C. A., 122, 65 L. R. A., 864.

The embarrassment of which the complainants complain is one which all who enter into a business or purchase property subject to the control of the police power must take into consideration and be prepared for. Complainants can have the statute construed and its validity determined in any criminal action that may be brought against them in a court of Hamilton county having criminal jurisdiction. They will not be in any way embarrassed in making their defenses in that court. If the law is as they insist, it will be there so decided, and they will be discharged. If it is valid, and applies to them, they will be properly convicted. We do not think the apprehension of vexatious litigation and multiplicity of suits is made out. This is wholly within the control of the complainants; for, unless, they violate the law, no indictments will be preferred against them. When this bill was filed, no prosecutions had been begun. We cannot presume that the defendants, as officers, will, or that the criminal court of Hamilton county will, permit complainants to be vexed and harassed by a multiplicity of suits, if it be there determined, in the first case brought to trial, that the statute either does not apply to complainants, or is invalid. The presumption, to the contrary, is that these officers will not use their official authority to vex or oppress citizens, and such unlawful conduct will not be anticipated. *Denver* v. *Beede,* supra; *Poyer* v. *Des Plaines,* supra; *Brown* v. *Birmingham,* supra.

Complainants have also failed to show a case of ir-

reparable injury and loss, which is absolutely neces-
sary upon their own contention.  The bill contains al-
legations to this effect; but the court will always look
behind charges of this kind, and see if the facts stated
sustain them.  We find that the property of complain-
ants, the value of which they claim will be destroyed
if they are unable to sell it in Chattanooga, is a staple
article, not subject to immediate deterioration, and
much of which must be kept for years in order to make
it marketable, and for which the distilleries had estab-
lished a market and large demand in other States of the
Union and foreign countries, where they can sell and
dispose of it without loss.  Their sales must have been
chiefly to parties away from Chattanooga, and in other
States, before the enactment of the law, as the territory
in which intoxicating beverages could be lawfully sold
in this State was then very limited.  They are not pro-
hibited by the statute from storing or shipping their
whiskies and beer.  Irreparable injury must not be fan-
cied, or a matter of inconvenience, but must be real
and practically unavoidable, and certain to follow.
There is not here that clearness and certainty of either
the right of complainants, or of the damages that will
follow, to justify a court of equity to enjoin threatened
proceedings at law in any case.  16 Am. and Eng. Ency.
of Law, p. 358.

From a careful review and consideration of all the
authorities discussed, we are of the opinion that the
weight of judicial opinion and text-book law is with

the ruling of this court in *Fritz* v. *Sims,* supra, and, with possibly some modification in cases where the court has assumed jurisdiction of property on other grounds, and the injunction is merely ancillary, we adhere to it.

We are further of the opinion that courts of equity have no jurisdiction to enjoin threatened criminal proceedings under a statute enacted by a State in the exercise of the police power in relation to which the legislature has complete jurisdiction, although it be charged that the statute is invalid and that a multiplicity of actions thereunder will injure and destroy civil and property rights of the complainants, and that the damages resulting will be irreparable, when the complainants' defense thereto, in a court having jurisdiction of the offense, is adequate and unembarrassed; and we hold that the chancery courts of Tennessee, neither under their inherent nor statutory jurisdiction, have any such power or jurisdiction, whatever may be the exceptions to the general rule in the courts of equity of other jurisdictions.

We are also of the opinion that the complainants have not presented in this record a case of irreparable injury, and that they can have the benefit of all the questions they have made in regard to the validity of the statute which they attack in a court of criminal jurisdiction, and that their bill does not disclose anything which would embarrass them in making those defenses, or render them inadequate, if good in law, upon a trial

Kelly v. Conner.

under presentment or indictment according to the practice of such courts.

This conclusion disposes of the case. The chancery court having no jurisdiction to entertain and determine the case upon the merits, this court cannot do so; and we do not decide anything in regard to the merits or other questions than the one just disposed of. The only decree we can and will pronounce is one of dismissal and adjudging costs.

We regret that the case must take this course, because of the public interest in the proper construction of the statute in question, the importance of it to many citizens of the State, and the rest and quietude that a final decision of it would bring to those interested.

All the questions presented in the case have been ably and elaborately argued by brief and at the bar, and the court has given much consideration to them.

The question will, almost to a certainty, be in some form presented, and the court could now with more ease dispose of it than at any other time. We cannot, however, without usurping jurisdiction, do so.

The rule which prevents a court of chancery from interfering with the administration of the criminal laws of this State is a wise one, founded upon sound principles of public policy, and, if we had the power to do so, we fear that changing it would result in much confusion and embarrassment in preserving peace and order, and enforcing the police power of the State generally, which would outweigh the good that would follow an

immediate decision of this case upon the merits. The injury to the general public, which would ultimately result from the exercise of this jurisdiction, would be greater than that to individuals when left to their remedies in courts of law.

We therefore feel compelled to sustain the first and third assignments of error of the defendants, and dismiss the bill for the want of jurisdiction of a court of chancery of this State to entertain it.