# CHARLESTON

FELLOWS v. CITY OF CHARLESTON.

Submitted September 6, 1907.    Decided November 19, 1907.

1. MUNICIPAL CORPORATIONS—*Ordinances—Constitutional Law.*
   An ordinance of the City of Charleston requiring a permit from the city to build a house is a valid exercise of police power under its charter. and is not repugnant to the federal constitution. (p. (p. 667.)

2. INJUNCTION—*Invalid Ordinance—Enforcement.*
   Where property rights will be destroyed or their lawful enjoyment taken away by criminal proceedings under an invalid law or ordinance equity has jurisdiction to enjoin them. (p. 666.)

Appeal from Circuit Court, Kanawha County.

Bill by Sallie Fellows and her husband against the city of Charleston.    Decree for plaintiffs, and the city appeals.

*Reversed.    Injunction Dissolved.    Bill Dismissed.*

L. E. McWHORTER and MURRAY BRIGGS, for appellant.

FERGUSON & ELLISON, for appellees.

BRANNON, JUDGE:

Sallie Fellows and A. A. Fellows, her husband, claiming to own a lot of land on the bank of the Kanawha river between its low water mark and Front or Kanawha street in the city of Charleston, were proceeding to erect a dwelling house on the lot, and after they had partly constructed it the City of Charleston caused a warrant to be issued for the arrest of A. A. Fellows on the charge, as the bill says, that the building of " said house was in violation of law and an ordinance of said city," and caused said Fellows to be arrested and stopped him, and forced him and his employees to abandon and quit work and leave the house unfinished, and frightened the employees from work and forbade them thereafter to resume work, threatening them with arrest and criminal prosecution and fine and imprisonment should they do so.    The bill says that the police judge of the city upon said warrant imposed on Fellows a fine of Ten Dollars, and that Fellows took an appeal to the criminal court. Fellows and his wife filed a bill in the circuit court of Ka-

nawha county against the city of Charleston, its Mayor and other officers praying an injunction against them to restrain them from further molesting, arresting, criminally prosecuting and imposing fines upon the plaintiffs, their employees and servants, for being engaged in the erection of said house and until the final adjudication of the said criminal case on appeal, pending in the criminal court of Kanawha county, and until the completion of their said house on their said lot. The court awarded an injunction commanding the city and its officers to cease and abstain from further molesting, arresting, hindering or in any way interfering with Sallie Fellows and A. A. Fellows, their employees or servants, in the erection of said building. The court overruled a motion to dissolve the injunction, and the City of Charleston took an appeal.

So confused and irregular are the bills and many orders in the case that it is quite difficult to get at the true merits for decision presented by the record. There was a bill filed at rules under the summons, which we should think would be the bill of the record, but before the court another bill was filed, and afterwards amended at the bar. It is claimed that the bill is insufficient. Open to criticism it is, but we shall treat it for all that it is worth and decide the case upon the bill filed in court, though it was not filed as an amended bill. The bill does not say what the offence was on which the warrant of arrest was predicated; but the answer and an exhibit later filed introduce an ordinance of the city, and we gather that the city issued its warrant for a violation of an ordinance requiring that before a building should be erected in the city there should be a permit granted for its erection, and prohibiting its erection without such permit, and imposing a fine for the violation of the ordinance.

The first question arises upon the contention by the city that equity has no jurisdiction of the case, because equity will not enjoin a criminal prosecution. For this position we are referred to *Flaherty* v. *Fleming*, 58 W. Va. 669. It holds the general principle that, "It is a rule, subject to few exceptions, that a court of equity will not interfere by an injunction with criminal proceedings." But that case distinctly admits that if criminal prosecution destroys civil property and its enjoyment, in protection of the property right equity may

properly enjoin the criminal prosecution.   Now, surely, the
prosecution of criminal process illegally preventing the con-
struction  of a residence on real estate deprives the owner of
a  very important use of his land, practically  taking it from
him.   6 Pomeroy, Eq. (3 Ed.) section 644; 22 Cyc. 902; *Dob-
bins* v. *Los Angeles*, 195  U. S. 224.    Therefore, there is
jurisdiction in equity for injunction.   And  aside from  that
question, there stands the fact alleged that the city and  its
constituted officers were hindering and obstructing the  erec-
tion of the house, and that itself, I think,  would  sustain the
jurisdiction.

The plaintiffs' counsel assail the  ordinance of the  city of
Charleston as void.   If that be so, there would be no color
of jurisdiction for the action of the city authorities.   Hence
we must inquire whether  that ordinance is valid or void.
The enactment of an ordinance  directing and  regulating the
construction of buildings in cities, and requiring  a  permit
from the city therefor, is an exercise of  that  great power
called police power.   That power is vital and  indispensable.
Without it cities and towns could not exist.   That power  is
vested in the state; but it being utterly impracticable that the
state legislature and executive  could  regulate by their con-
stant presence all the doings in cities and  towns, it became
indispensable that the state should  delegate the exercise of
such  power to those petit states, the cities and towns.   "Mu-
nicipal corporations have  exercised the  police  power  *eo
nomine* for time  out  of  mind by making  regulations to
preserve order,  to promote freedom of  communication, and
to facilitate the  transaction of  business in crowded communi-
ties; and this  power  of local legislation  may  be conferred
upon  the smallest village that  the legislature sees  fit to in-
corporate as well as upon the largest city in the state.   The
extent of their police powers depends  upon the limitations
of  their charters.   The power to be exercised is frequently
restricted to the one  phrase 'police powers,' and the ordi-
nances must then be  reasonable regulations upon subjects
which are recognized as  falling  within the scope of such
powers."   *   *   *   *   "Delegation of police power.   The
legislature may delegate to a municipality the power to adopt
ordinances on matters of local  importance although there
are general statutes on  the same subject.    An ordinance

legally referable to any one of several delegated powers is valid." 2 Smith on Munic. Corp.; sections 1320, 1321. See 22 Am. & Eng. Ency. L. 919. But a municipal corporation cannot exercise this police power unless authority to do so is given by the Legislature to it. *Morley* v. *Godfrey*, 54 W. Va. 54; *Judy* v. *Laskley*, 50 *Id*. 628. It can exercise those powers and no others granted expressly in its charter, and those necessarily implied or incident to the powers that are expressly granted, and those essential to the declared purpose of the corporation and indispensable to it. *City of Charleston* v. *Reed*, 27 W. Va. 681. Turning now to the Acts of 1895, chapter 58, amending and reenacting the charter of Charleston, we find in section 21, that the council is given full power "to control the construction and repair of all houses   *   *   *   *   to provide for the regular building of houses or other structures, and determine the distance that they shall be built from any street or alley;   *   *   *   *   to abate or cause to be abated anything which in the opinion of the council shall be a nuisance." Section 22 gives the council power, in order to carry out the powers enumerated in section 21, and "all others conferred upon the said city or its council expressly or by implication in this or any other acts of the Legislature" to "adopt and enforce all needful orders, by-laws and ordinances not contrary to the laws or the Constitution of the State, and to prescribe, impose and enforce reasonable fines and penalties, including imprisonments, under judgment and order of the mayor or recorder of said city." Under that statute it is very clear that the city had power to pass the ordinance requiring a permit from it for the construction of the house. The ordinance requires the person proposing to build to lay before the inspector of buildings plans and specifications of every building and obtain the approval of the inspector, and requires that the approval should go before the council and the party obtain its approval and permit. This Court has recognized the power of a city to demand such permit and to regulate buildings by laying down principles which would thus empower the city. *City of Charleston* v. *Reed*, 27 W. Va. 681. More particularly as to building permits, though they certainly would be included under such general powers as are spoken in the act above mentioned. We find in Mc-

Quillin on Munic. Ordinances, section 471, this: "Where the charter power is ample, the local corporation may require a certificate or permit, issued by the proper official as a condition precedent to the erection of new buildings or the material alterations or additions to buildings already erected; but whether such authority exists and the manner of its exercise depend upon the provisions of the charter and legislative acts applicable. Where the charter power is sufficient, an ordinance requiring a permit in order to alter or repair wooden buildings within the fire limits will be held constitutional." In 2 Smith on Munic. Corp., section 1331, we find it stated that, "As a protection against fire a municipality may, as a legitimate exercise of police power, make reasonable regulations in regard to the construction, character and nature of buildings within the corporate limits." And there we further find the statement of this legal proposition: "Thus it was held that such a grant of power would sustain an ordinance prohibiting any person from erecting buildings within the limits of the town without a permit from the governing board." They are required in almost all cities and in many towns. They tend to prevent disease and fires, and this is warranted by *Charleston* v. *Reed*, 27 W. Va. 681. Upon these and many other authorities, we may assert the power of the City of Charleston to demand a permit for the erection of this building. The invalidity of the ordinance cannot be predicated upon general law. No ground is specified to sustain the claim to invalidate this ordinance, except that it is a violation of Amendment Fourteen of the Constitution of the United States in that the ordinance deprives an owner of his property without due process of law. Can it be thought for a moment that it was the design of that amendment to destroy a vital power vested in the state, and by its delegation vested in a city, a power vastly essential to a city? Let us cite some authorities from the national Supreme Court on this matter. In *Barbier* v. *Connelly*, 113 U. S. 27, we find the holding that, "The Fourteenth Amendment of the Constitution does not impair the police power of a state." So also holds the case of *Minneapolis R. Co.* v. *Bechwith*, 129 U. S. 26. See Brannon's Fourteenth Amendment 167. After writing to this point I meet with the case of *Wilson* v. *Eureka*

*City*, 173 U. S. 32, in which was involved an ordinance that "No person shall move any building or frame of any building into or upon any of the public streets, lots or squares of the city or cause the same to be upon or otherwise obstruct the free passage of the street, without the written permission of the mayor or president of the city council. A violation of this section shall on conviction subject the offender to a fine of twenty-five dollars." The court held that the ordinance was not in violation of the Fourteenth Amendment. An ordinance prohibiting the alteration and repair of any wooden building within certain limits without permission of the majority of the firewarden and approved by a majority of the fire department and mayor was held not in violation of the Fourteenth Amendment. *Ex parte Fiske*, 72 Cal. 125, 13 Pac. R. 310. These cases answer the charge that the Federal Constitution is violated by the ordinance. And for its validity and reasonableness I add the following authorities: *Easton* v. *Covey*, 74 Md. 262, (22 Atl. R. 266); *Hine* v. *New Haven*, 40 Conn. 140; *City* v. *Mann*, 1 Wash. 389, (25 Pac. R. 337); *Rochester* v. *West*, 79 Am. St. R. 659. In *Hasty* v. *City*, 105 Ind. 540, an ordinance making it unlawful to erect a building within the city without making application to the clerk of the board of improvements was held valid. See *McCloskey* v. *Kreling*, 76 Cal. 511. See also Freund on Police Power, sections 643, 644, for collection of cases on the subject. Also 34 Amer. Dec. 633.

The bill charges that the ordinance was not, during the process of its enactment, published as required by law. The record does not sustain this charge. There is no evidence of it. So, we find that the ordinance is valid.

The ordinance being valid the plaintiffs must show that they had a permit from the city for the building of the house. The bill alleges that they had such permit. I do not think the evidence shows it. But I need not inquire as to that; for the answer flatly denies that there was any such permit, and says that the council refused the permit on consideration of the application. There is no replication to that answer, and, under well-settled principles of equity procedure, where an answer is filed and no replication made, all the allegations therein, whether responsive to the bill or not, must

be taken as true.  *Bierne* v. *Ray*, 37 W. Va. 571. This ends the case.  I will add that the answer denies the ownership of the lot by the plaintiffs.  Denies the right to build on it, and thus denies the right to have any relief as to the property.  The answer wholly denies all right in the plaintiffs.  Though for the decision of the case it is not material, I will add that the answer states that the building in process of erection invaded the street.  A survey of it shown by a plat filed shows that it invades the street.  This being so, the city had a right to enforce its ordinance by the penal proceedings above referred to.  *Charleston* v. *Reed*, 27 W. Va. 681, pt. 6.  It is well settled that the building upon a street is a public nuisance, *Pence* v. *Bryant*, 54 W. Va. 263. The town has power to enforce its ordinance and if necessary for the abatement and removal of the nuisance may remove or destroy the thing creating the nuisance, and it is not a taking of property without due process of law.  Brannon's Fourteenth Amendment, 216, citing for authority *Muglar* v. *Kansas*, 123 U. S. 623, and *Lawton* v. *Steele*, 125 U. S. 133. But the town took no steps to remove the house, but simply the penal proceedings aforesaid.

Upon the principles above stated we must dissolve the injunction and dismiss the bill.

*Reversed.   Injunction Dissolved.   Bill Dismissed.*