R. M. ALEXANDER, JR., by next friend, R. M. ALEXANDER, SR., *v.* JAMES P. ELKINS, W. F. BARRETT and MAUDE ALEXANDER.

*(Knoxville.* September Term, 1915.)

1. INJUNCTION. Criminal proceedings.

Courts of equity have no jurisdiction to enjoin threatened criminal proceedings under a statute exercising the State's police power in a matter as to which the legislature has complete jurisdiction, though it be charged that the statute is invalid, that a multiplicity of actions thereunder will injure and destroy civil and property rights of complainant, and that the damages resulting will be irreparable, when complainant's defense in a court having jurisdiction of the offense is adequate and unembarrassed. (*Post, pp.* 667, 668.)

Acts cited and construed: Acts 1909, ch. 207.

Case cited and distinguished: Kelly v. Conner, 122 Tenn., 339.

2. INJUNCTION. Criminal proceedings. Prosecutions under unconstitutional act.

Where the father of a girl threatened her husband, whom she had left, with interminable criminal prosecutions under a statute which the supreme court had declared unconstitutional, unless he contributed to her support, having procured a justice of the peace who was willing to issue warrants for such husband's arrest whenever demanded, such husband could restrain the father and justice from effecting such series of prosecutions, since the rule that courts of equity cannot enjoin threatened criminal proceedings under a statute enacted by the legislature in the exercise of its police power has no application to prosecutions threatened under acts adjudged unconstitutional by the supreme court, as a warrant of arrest, charging a party with a violation of such an act, is absolutely void, and if by collusion between an officer and a private citizen the latter is

Alexander v. Elkins *et al.*

suffered to procure warrants of arrest and the purpose is expressed by such citizen to continue the procurement of false warrants if money demanded is not paid, and if the officer agrees to continue to issue them and to cause the defendant to be arrested on them until he comply with the demand to pay money, such defendant is not relieved of the illegal persecution by the facts that the warrants in fact and law charge no crime, and that he has an adequate defense as against them in any court of competent jurisdiction. (*Post, pp.* 668-672.)

Cases cited and approved:   Ulster Square Dealer v. Fowler, 58 Misc. Rep., 325; Poyer v. Des Plaines, 123 Ill., 111; Wallack v. Society for Reformation of Juvenile Delinquents in City of New York, 67 N. Y., 23; West v. New York, 10 Paige (N. Y.), 539; Crighton v. Dahmer, 70 Miss., 602; Littleton v. Burgess, 14 Wyo., 173; Hall v. Dunn, 52 Or., 475; Denton v. McDonald, 104 Tex., 206; Kelly v. Conner, 122 Tenn., 339; Old Dominion Telegraph Co. v. Powers, 140 Ala., 220; Thompson v. Tucker, 15 Okl., 486; Sullivan v. San Francisco Gas & Electric Co., et al., 148 Cal., 368; N. O. Baseball & Amusement Co. v. City of New Orleans, 118 La., 228; Fritz v. Sims, 122 Tenn., 137; Fellows v. City of Charleston, 62 W. Va., 665; Mahoning, etc., Co. v. New Castle, 233 Pa., 413.

3. **PLEADING. Demurrer. Admission.**
On demurrer the allegations of a bill must be taken as true. (*Post, pp.* 668-672.)

---

FROM BRADLEY.

---

*Appeal from the Chancery Court of Bradley County. —V. C. ALLEN, Chancellor.*

JOHN C. RAMSEY, for appellant.

MAYFIELD & MAYFIELD, for appellees.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The bill alleges, in substance, that a short time prior to November 12, 1912, complainant and defendant Maude Alexander (formerly Elkins) intermarried; that they were both minors, and are still under age; that after living together a few months they separated, the wife returning to the home of her father, defendant James P. Elkins; that there was much controversy between the respective families as to which one was to blame, and in consequence great bitterness grew up; that soon after the separation the said defendant Elkins began a crusade against the complainant for the purpose of compelling him to support his wife; that, with this view, on November 6, 1913, he procured a warrant and caused complainant to be arrested under the provisions of chapter 207, Acts 1909, one purpose of which was the compelling of husbands who had deserted and failed to provide for their wives to support them; that he was, under this warrant bound over, tried and convicted in the circuit court of Bradley county, and fined $25, but the judgment was stayed, with a view to obtaining a reconciliation if possible, but no reconciliation has resulted; that he sought to have his wife return to him; that she refused to come back and live with him, yet, notwithstanding this, he sent her $10 per month for five months; that on June 3, 1914, about two months after the payments ceased, defendant Elkins procured another warrant for complainant's arrest un-

der the same act; that defendant Elkins is now threatening to have complainant arrested every week and that he will continue until he is arrested three hundred and sixty-five times, unless he continues to pay $10 per month to his wife; that the defendant Barrett, a justice of the peace of Bradley county, has expressed his willingness to issue warrants for complainant's arrest whenever demanded by Elkins under the statute referred to; that in this manner complainant is being harassed and persecuted, and that such persecution will continue as threatened unless restrained by injunction; that is to say, that complainant will be continually arrested under warrants sworn out by Elkins and issued by Barrett, under the statute referred to, to compel him to pay the money demanded by Elkins for his daughter, complainant's wife; that complainant is thus wrongfully and maliciously persecuted, and required to give bond for his appearance at court, or be placed in jail, and that he is forced to incur great expense in making his defense and resisting the said unlawful encroachments on his rights as a citizen; that the only authority claimed for such arrests is the said chapter 207, Acts 1909, but that said supposed act is no true act, and is not a law of the State; that on the 16th of July, 1910, this supposed act was, by the supreme court, declared unconstitutional and void, a certified copy of the court's judgment in the case referred to (*State* v. *Thomas Miller*) being made an exhibit to the bill; that defendants Elkins and Barrett have been informed of the action of the supreme court on said

Alexander v. Elkins *et al.*

chapter 207, Acts 1909, but have continued their persecution notwithstanding, and say they will still continue it, the defendant Barrett saying that he finds the act printed in his copy of the statutes for the year 1909, and that he will continue to issue warrants of arrest under it so long as it remains in his book; that the defendants Elkins and Barrett are thus defying the law as declared by the supreme court of the State, and through the existence of this unconstitutional, supposed act printed among the published Laws of 1909, they are directing the machinery of the law to purposes of gross injustice, with a view to compelling the complainant to pay the money demanded of him.

A demurrer was filed by the defendants offering, as a legal defense to the bill, that the complainant was "not entitled to enjoin defendants from prosecuting complainant for an alleged violation of the criminal laws of the State." This demurrer was sustained by the chancellor, and the bill dismissed.

The records of this court show that chapter 207, Acts 1909, was declared unconstitutional on July 16, 1910, on the ground that the act was in violation of section 17, art. 2, of our Constitution of 1870.

In the case of *Kelly* v. *Conner,* 122 Tenn., 339, 396, 123 S. W., 622, 25 L. R. A. (N. S.) 201, it was said: . . . "Courts of equity have no jurisdiction to enjoin threatened criminal proceedings under a statute enacted by a State in the exercise of the police power in relation to which the legislature has complete jurisdiction, although it be charged that the statute is in-

valid, and that a multiplicity of actions thereunder
will injure and destroy civil and property rights of
the complainants, and that the damages resulting will
be irreparable, when the complainants' defense thereto,
in a court having jurisdiction of the offense, is ad-
equate and unembarrassed; and we hold that the chan-
cery courts of Tennessee, neither under their inherent
nor statutory jurisdiction, have any such power or ju-
risdiction, whatever may be the exceptions to the gen-
eral rule in the courts of equity of other jurisdictions.''

We adhere to this statement of the law, but it does
not apply to prosecutions threatened under acts which
have already been adjudged unconstitutional by this
court.  In *Kelly* v. *Conner* that question was not in the
mind of the court.   There it was sought to enjoin
threatened prosecutions under an act which had never
been impeached.   The bill charged that the act was
unconstitutional, and sought to have it so declared.
Ample reasons were given in the opinion of the court
why such a course of litigation would be inadmissible
under the facts presented in that case; but those rea-
sons cannot be held to apply to a spurious prosecution
under a supposititious act, already declared and ad-
judged by the highest judicial authority in the State,
in a regular judicial proceeding, to be no true law.  A
warrant of arrest, charging a party with the violation
of such an act, is just as void of efficacy on its face as
if it charged a violation of the laws of China or Japan.
But if by collusion between an officer of the law and a
private citizen, the latter is suffered to procure war-

Alexander v. Elkins *et al.*

rants of arrest, and the purpose is expressed on the part of such private citizen to continue the procurement of such false warrants until he has obtained hundreds of them, if money demanded be not paid, and if the officer of the law agrees to continue to issue them, and to cause the complainant to be arrested on them, until he comply with the unlawful demand to pay money, such citizen is not relieved of the persecution by the fact that the warrants in fact and law charge no crime.  He can, it is true, be ultimately relieved when each case is finally brought before the higher courts, but under the allegations of the bill new prosecutions of the same false character will be brought, since, according to the bill, the threats of arrest are made notwithstanding knowledge of the decision of the supreme court declaring the act void.  It will boot the complainant little that he is sure of overthrowing each new prosecution as it arises.  He will suffer the harassment of the repeated interferences with his liberty, the constantly recurring trials, and the accumulating expenses.  Under such circumstances the remedy at law is very inadequate.  The whole persecution can be ended by the chancery court, through its injunctive power, at one stroke.  Why should the court not exercise this power?  It is urged that the chancery court has no jurisdiction to interfere with criminal prosecutions, except in the way of protecting property rights already under its care, and sought to be disturbed through the agency of a criminal prosecution by some party to the litigation, or connected with the interests

in litigation, thus depriving the court, indirectly, of its control. Some other cases take a wider view of the power of the court to protect property rights against assaults through criminal prosecutions, but even on the stricter view, there can be, as we think, no objection to the bill before us. The chancery court is not asked to invade the jurisdiction of the criminal court. There is no question of guilt or innocence to be tried. Under the case stated there are no controversies to be settled by a criminal court. There is in this State no law under which the acts charged can be held criminal, and hence no crime is charged. None of the evils therefore stand in the way which are to be encountered when the court of chancery attempts to usurp the functions of courts of criminal jurisdiction. There is before us (accepting the bill as true, as must be done on demurrer) simply a bold misuse of criminal process, actual and threatened, to harass a man without any color of legality, and the expression of a purpose to continue this unlawful use indefinitely, through connivance of one of the law officers of the State, to compel complainant to pay money demanded. If there be no precedent for the interference of a court of chancery in such a case it is time one should be made. Certainly the relief sought falls within the general scope of those equitable principles which entitle a citizen to protection against multiplied, repeated, and vexatious suits. Compare *Ulster Square Dealer* v. *Fowler,* 58 Misc. Rep., 325, 111 N. Y. Supp., 16.

We have no knowledge of any direct authority on the precise point, unless it be *Block* v. *Crockett*, 61 W. Va., 421, 56 S. E., 826. The syllabus of that case correctly expresses its substance in the following language:

"Equity will not, as a general rule, interfere by injunction with criminal proceedings; but when a statute or municipal ordinance has once been declared illegal by a court of law of competent jurisdiction, and other prosecutions thereunder are begun or threatened which will result injuriously to one in the enjoyment of his civil rights of property in which he is protected by general law, equity will interfere by injunction to restrain the same."

The court referred to in this excerpt was not a court of last resort, and therefore we do not wish to be understood as approving the ruling in that case in its entirety. In the case before us, as already stated, the act had been declared void by our court of last resort. In *Block* v. *Crockett,* other cases are referred to in support of the proposition stated in the syllabus; but, as we understand these cases, they merely suggest, or imply, without deciding the point, that equity would interfere by injunction, in case there had been, at law, a previous decision holding the statute void. These cases are *Poyer* v. *Des Plaines,* 123 Ill., 111, 13 N. E., 819, 5 Am. St. Rep., 494; *Wallack* v. *Society for Reformation of Juvenille Delinquents in City of New York,* 67 N. Y., 23; *West* v. *New York,* 10 Paige (N. Y.), 539.

The authorities on the general subject may be found collected in the cases, and the notes, to *Crighton* v.

*Dahmer,* 70 Miss., 602, 13 South., 237, 21 L. R. A., 84, 35 Am. St. Rep., 666; *Littleton* v. *Burgess,* 14 Wyo., 173, 82 Pac., 864, 2 L. R. A. (N. S.), 631; *Hall* v. *Dunn,* 52 Or., 475, 97 Pac., 811, 25 L. R. A. (N. S.), 193; *Denton* v. *McDonald,* 104 Tex., 206, 135 S. W., 1148, 34 L. R. A. (N. S.), 453; also very many of these are in *Kelly* v. *Conner,* supra; also reported in 122 Tenn., 339, 123 S. W., 622, 25 L. R. A. (N. S.), 201; *Old Dominion Telegraph Co.* v. *Powers,* 140 Ala., 220, 37 South., 195, 1 Ann. Cas., 119, and note; *Thompson* v. *Tucker,* 15 Okl., 486, 83 Pac., 413, 6 Ann. Cas., 1012, and note; *Sullivan* v. *San Francisco Gas & Electric Co. et al.,* 148 Cal., 368, 83 Pac., 156, 3 L. R. A. (N. S.), 401, 7 Ann. Cas., 574; *New Orleans Baseball & Amusement Co.* v. *City of New Orleans,* 118 La., 228, 42 South., 784, 7 L. R. A. (N. S.), 1014, 118 Am. St. Rep., 366, 10 Ann. Cas., 757, and note; *Fritz* v. *Sims,* 122 Tenn., 137, 119 S. W., 63, 135 Am. St. Rep., 867, 19 Ann. Cas., 458, and note; *Fellows* v. *City of Charleston,* 62 W. Va., 665, 59 S. E., 623, 13 L. R. A. (N. S.), 737, 125 Am. St. Rep., 990, 13 Ann. Cas., 1185; *Mahoning, etc., Co.* v. *New Castle,* 233 Pa., 413, 82 Atl., 501, Ann. Cas., 1913B, 658.

In the case before us, the court of civil appeals affirmed the chancellor's decree. This action, we think, was erroneous, and we accordingly direct a decree to be entered reversing the decree of the court of civil appeals, and that of the chancellor, and remanding the cause for further proceedings.