decision and journal entry
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Virgil Cochran, appeals the entry of summary judgment against him in the Barberton Municipal Court. We reverse in part and affirm in part.
 I.
Mr. Cochran has resided in the City of Norton ("Norton") for many decades. At his residence on Alberta Drive, Mr. Cochran likes to keep old vehicles in his yard. In 1991, Mr. Cochran had five unlicensed vehicles on his property. Norton notified him that if they were not removed within three days, they would be towed and impounded pursuant to Norton Codified Code ("NCC") 660.20. In September 1991, the five vehicles were towed and impounded by Norton. Mr. Cochran filed suit in the United States District Court for the Northern District of Ohio alleging that Norton had violated his constitutional rights. In an opinion issued on April 15, 1993, the United States District Court denied Norton's Fed.R.Civ.P. 12(b)(6) motion to dismiss and stated "Norton City Ordinance Section 660.20 violates theFourteenth Amendment in so far as it does not provide for a pre-seizure hearing[.]" The cause was eventually tried to a jury, which awarded Mr. Cochran damages. Norton did not appeal the United States District Court's decision; however, Mr. Cochran did appeal. The United States Court of Appeals for the Sixth Circuit affirmed the District Court, noting that "the district court judge concluded that the challenged ordinance was unconstitutional in that it violated Cochran's procedural due process rights by not providing for a pre-deprivation hearing." Cochran v.Norton (June 19, 1997), C.A.6 No. 96-3847, unreported, 1997 U.S. App. LEXIS 15288; Cochran v. Norton (June 3, 1996), C.A.6 Nos. 95-3024, 95-3027, 95-3163, unreported, 1996 U.S. App. LEXIS 17284. The United States Supreme Court denied Mr. Cochran's petitions for writ of certiorari.
In the spring of 1998, Mr. Cochran again had four vehicles in his yard, including a Dodge Lancer, a Toyota van, a Mercury Marquis, and a Lincoln Town Car. In letters sent to Mr. Cochran on March 5 and April 14, 1998, Norton demanded the removal of the vehicles and threatened Mr. Cochran with prosecution pursuant to NCC 90.17 and 90.35. After Mr. Cochran declined to remove the vehicles within the time specified in the letters and was afforded additional time, an officer of the City of Norton Police Department cited him for violating NCC "90.17" on April 30, 1998, a minor misdemeanor. The cause was apparently tried. On August 17, 1998, the cause was dismissed by the trial court, but Mr. Cochran was assessed costs. In State v. Cochran (Apr. 14, 1999), Summit App. No. 19286, unreported, this court reversed the trial court's assessment of costs.
On March 15, 2000, Mr. Cochran filed the instant action. Although entitled an action for declaratory judgment, Mr. Cochran's complaint stated damages claims for Norton having violated his constitutional rights, malicious prosecution, and the forced sale of his Toyota van. The cause was removed from the Barberton Municipal Court to the United States District Court for the Northern District of Ohio and then remanded back to the Barberton Municipal Court. On September 20, 2000, Mr. Cochran filed a supplemental complaint. Norton moved to strike Mr. Cochran's supplemental complaint on October 4, 2000. Mr. Cochran filed a brief in opposition on October 16, 2000. The record does not disclose the trial court's disposition of this matter. Meanwhile, on September 25, 2000, Norton filed a motion for summary judgment. On October 13, 2000, Mr. Cochran responded in opposition. The matter was further briefed. On December 6, 2000, the trial court granted Norton leave to file a corrected affidavit of Mr. Gregory Carris and entered summary judgment in favor of Norton. This appeal followed.
 II.
Mr. Cochran asserts nine assignments of error. We will discuss each in due course, consolidating his first, third, fourth, seventh, and eighth assignments of error to facilitate review and his second, fifth, sixth, and ninth assignments of error because we find them to be moot or unripe depending upon the disposition of the cause by the trial court on remand.
 A. First Assignment of Error
The lower court erred to the denial of [sic] Plaintiff-Appellant'slawful rights in both the constitutions of the United States andthe State of Ohio.
 Third Assignment of Error
The lower court erred in its finding that there were no issues of genuine material fact.
 Fourth Assignment of Error
The lower court erred by failing to rule on all three of thePlaintiff-Appellant's claims.
 Seventh Assignment of Error
The lower court erred by failing to distinguish the many genuine issuesof material fact on the face of the complaint, the supplementalcomplaint, the Plaintiff-Appellant's motion in opposition to summaryjudgment, the exhibits, and the Plaintiff-Appellant's response to newmatters raised by Defendant-Appellee.
 Eighth Assignment of Error
The lower court erred by violating Plaintiff-Appellant's First Amendmentright to petition the government for redress of grievance in theUnited States Constitution.
Mr. Cochran avers in these assignments of error that the trial court erred in granting summary judgment to Norton due to the outstanding genuine issues of material fact in the cause below. We agree.
Pursuant to Civ.R. 56(C), summary judgment is proper if:
(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. However, "[o]ne cannot weigh evidence most strongly in favor of one opposing a motion for summary judgment when there is a dearth of evidence available in the first place." Tucker v. Webb Corp. (1983), 4 Ohio St.3d 121, 123; see, also, Hatzlachh Supply, Inc. v. Appliance Ctr. of Toledo, Inc. (Sept. 30, 1988), Lucas App. No. L-88-040, unreported, 1988 Ohio App. LEXIS 3904, at *4 (lack of evidence on key issues renders summary judgment inappropriate).
Appellate review of a lower court's entry of summary judgment is denovo, applying the same standard used by the trial court. McKay v.Cutlip (1992), 80 Ohio App.3d 487, 491. The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of his motion. Id. Once this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that shows a genuine dispute over the material facts exists. Henkle v. Henkle (1991), 75 Ohio App.3d 732, 735.
Unresolved Issues of Fact and Law Regarding the Challenged Statutes
Mr. Cochran's suit is based upon his prosecution under NCC 90.17, threatened prosecution under NCC 90.35, and the threatened removal, impoundment, and disposal of his vehicles under both ordinances. He has provided this court and the lower court with a copy of those ordinances. The authenticity of this copy is not challenged; in fact, the citation he was issued states that it is pursuant to NCC 90.17, and the letters sent to him by Norton threaten prosecution under both NCC 90.17 and 90.35. However, we are faced with issues that make it difficult, if not impossible, to determine whether Mr. Cochran's claims should have withstood Norton's motion for summary judgment. We will discuss these issues in regard to each statute separately, construing the facts in a light most favorable to Mr. Cochran.
First, we will discuss NCC 90.17. In an effort to resolve Norton's assertion that NCC 660.20, which was apparently found unconstitutional in a previous action, is different than the code sections herein at issue, we have reviewed duly certified copies of the NCC dating back to the 1970s. Unfortunately, we are unable to locate "CHAPTER 90[.]" Further, the manner in which the NCC is numbered is inconsistent with the existence of a "CHAPTER 90" or section "90.17[.]" In fact, the numbering system employed in the NCC seems to preclude the existence of a Chapter 90 as the numbers are composed of code and then chapter numbers— 660 would be in code number 6, chapter 60. There is no code number 9 in the current NCC. However, in our review of the NCC, we have found code number 6 to contain sections of similar language and import to those in the proffered Chapter 90.
After being unable to determine where Chapter 90 appears in the NCC, we proceed to compare the copy of Chapter 90 provided to us with the NCC as we find it. The copy of NCC Chapter 90 provided to us is composed of three subsections: one dealing with abandoned motor vehicles, NCC 90.01-.04, one dealing with junk motor vehicles, NCC 90.15-.21, and one dealing with unlicensed motor vehicles, NCC 90.35-.38. The first of these, NCC 90.01-.04 is substantially similar to NCC 660.075. Further, both indicate the same passage date and enacting ordinance. We can find no section comparable to NCC 90.15-.21 dealing with "junk motor vehicles" in the current NCC, nor has Norton pointed out such a provision to this court. We find one section dealing with the storage and disposal of unlicensed motor vehicles which is of similar import to NCC 90.35, namely section 660.07. However, NCC 660.07 provides for a pre-deprivation hearing and appears to have been enacted in 1998, after the United States District Court's ruling. Hence, parts of Chapter 90 appear to be in the NCC, but we are unable to determine the law in effect at the time Mr. Cochran was cited or whether Chapter 90 represents a portion of the NCC that has been repealed, reenacted in different sections, re-codified, or amended.
Next, we turn to NCC 90.35. We have the same difficulties as enumerated above with determining the applicability of this section, but here these difficulties are compounded by the opinion of the United States District Court regarding NCC 660.20. The United States District Court quotes the statute that it is passing upon in its opinion; the language is substantially similar to NCC 90.36 and 90.37(A), but the United States District Court states that it is quoting from NCC 660.20. Further, the United States District Court noted NCC 660.20 was amended in 1989. NCC 90.36-.37 was similarly amended. Upon review of the current NCC, we find no NCC 660.20 but have found NCC 660.07, which deals with the storage and disposal of unlicensed motor vehicles and provides for a pre-deprivation hearing. It appears that this section was enacted after the United States District Court's ruling.
Being unable to find NCC 90.35 in the NCC, we turn to the United States District Court's opinion. It appears to have found NCC 660.20 unconstitutional as violative of due process principles. See Cochran,supra, 1997 U.S. App. LEXIS 15288 and Cochran, supra, 1996 U.S. App. LEXIS 17284. However, the record before us is unclear, as it does not contain the final decision of the United States District Court, although Mr. Cochran has provided a copy of the District Court's holding in regard to Norton's Fed.R.Civ.P. 12(b)(6) motion. In that order, the United States District Court indicates that NCC 660.20 is unconstitutional, as it violates due process principles by failing to afford a pre-deprivation hearing. We are unable to determine what effect the United States District Court's ruling, if in fact it did so rule, that NCC 660.20 was unconstitutional due to the lack of a pre-deprivation hearing and Norton's subsequent decision not to appeal, would have upon NCC 90.35. Further, as NCC 90.17 also appears to lack provision for a pre-deprivation hearing, we are unable to determine whether the United States District Court's decision and Norton's decision not to appeal would affect an estoppel herein regarding NCC 90.15 et seq. The record is unclear as to whether NCC 90.35 and NCC 660.20 are in fact the same ordinance, as NCC 90.01-.04 and NCC 660.075 appear to be. Further, the effect of the United States District Court's decision is made unclear by this uncertainty.
From the record before us, we are unable to determine whether one or both of these code sections were struck down as unconstitutional by the United States District Court or whether, as Norton avers, they are different sections. Further, we are unable to determine what sections of the NCC were in effect on the date that Mr. Cochran was charged and which, if any, correspond to the NCC provisions found unconstitutional by the United States District Court. Hence, we find that further ventilation of these issues below is required before summary judgment may become appropriate on these issues. See, generally, DeMarco v. Vandalia (Mar. 7, 1983), Montgomery App. No. 7953, unreported, 1983 Ohio App. LEXIS 12700;Commt. of Circulators v. Cuyahoga Cty. Bd. of Elections (June 18, 1981), Cuyahoga App. No. 43537, unreported, 1981 Ohio App. LEXIS 14043.
Application of Mr. Cochran's Claims to the Facts Presented
We now must determine whether, regardless of the uncertainty engendered by the statutes at issue, the trial court properly granted summary judgment on any of Mr. Cochran's claims. In his first complaint, Mr. Cochran asserts claims for malicious prosecution, abuse of process, intentional infliction of emotional distress, declaratory/injunctive relief, and, apparently, damages pursuant to Section 1983, Title 42, U.S. Code.
Section 1983, Title 42, U.S. Code ("Section 1983") provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State * * *, subjects * * * any * * * person * * * to the deprivation of any rights * * * secured by the Constitution * * * shall be liable to the party injured[.]" Mr. Cochran avers that Norton's actions violated numerous provisions of the United States Constitution, including the First, Fourth, Fifth, andFourteenth Amendments thereto. Further, he appears to aver Section 1983 claims based upon malicious prosecution, abuse of process, and intentional infliction of emotional distress, as well as Section 1983 alone. We will first address Norton's assertion of immunity and then each of Mr. Cochran's claims in turn.
 Immunity
Norton avers that it possesses sovereign immunity pursuant to Chapter 2744 of the Ohio Revised Code. However, R.C. 2744.09(E) provides that such sovereign immunity does not apply to "[c]ivil claims based upon alleged violations of the constitution or statutes of the United States[.]" Mr. Cochran's claims are that the NCC provisions violate the due process provisions of the United States Constitution and have been accordingly struck down by the United States District Court. Hence, his action is based upon constitutional violations, pursuant to Section 1983, Title 42, U.S. Code, and therefore, Norton is not immune from suit. See Hogan v. South Lebanon (1991), 73 Ohio App.3d 230, 233 (holding that the Ohio Political Subdivision Tort Liability Act does not apply to civil claims based on the deprivation of constitutional rights and that even if Ohio law barred such suits, Section 1983 preempts such law); accord, Chalker v. Howland Twp. Trustees (1995), 74 Ohio Misc.2d 5; Wohlv. Cleveland Bd. of Edn. (N.D.Ohio. 1990), 741 F. Supp. 688.
 Malicious Prosecution
"In researching the use of a claim of malicious prosecution as the basis for a Section 1983 action, we have found that the question of whether such a claim is actionable under Section 1983 is a subject `on which there is an embarrassing diversity of judicial opinion.' Albrightv. Oliver (1994), 510 U.S. 266, 271, * * * 127 L.Ed.2d 114, 121, fn. 4 * * *." Broadnax v. Greene Credit Serv. (1997), 118 Ohio App.3d 881, 889. However, the United States Court of Appeals for the Sixth Circuit has recognized such a cause of action. Broadnax, 118 Ohio App.3d at 889. To establish such a cause of action, one must plead and prove the state tort elements for malicious prosecution as well as show that one was deprived of a right secured by the Constitution and laws of the United States under color of state law, pursuant to Section 1983. Id. at 889-90. Even if one were "able to show all the elements of the state tort, a Section 1983 action is only proper when `the misuse of a legal proceeding is so egregious as to subject the aggrieved individual to a deprivation of constitutional dimension.'" (Citation omitted.) Id. at 890. The elements of the state tort action for malicious criminal prosecution are: "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused."Trussell v. General Motors Corp. (1990), 53 Ohio St.3d 142, syllabus. Based on the facts in the record, as enumerated above, we conclude that summary judgment was improperly rendered on this claim.
 Abuse of Process
Mr. Cochran also must plead and prove the essential elements of the state tort to maintain an action for abuse of process under Section 1983. Broadnax, 118 Ohio App.3d at 890. The essential elements of an abuse of process claim under state law are: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." Yaklevich v. Kemp, Schaeffer Rowe Co., L.P.A. (1994), 68 Ohio St.3d 294, 298. Mr. Cochran specifically avers in his complaint that Norton's actions were "without probable or reasonable cause[.]" Hence, as an action for abuse of process must be based upon legal proceedings set in motion in proper form and with probable cause, summary judgment was properly entered on this claim.
 Intentional Infliction of Emotional Distress
Mr. Cochran's intentional infliction of emotional distress claim is also lacking under state law. "One who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Yeager v. LocalUnion 20 (1983), 6 Ohio St.3d 369, syllabus. However, as this court has previously held, "[s]erious emotional distress engenders emotional injury which is severe and debilitating." Cherney v. Amherst (1991),66 Ohio App.3d 411, 413-14; see, also, Paugh v. Hanks (1983),6 Ohio St.3d 72, paragraph 3a of the syllabus. "Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." Paugh, 6 Ohio St.3d at paragraph 3a of the syllabus. "`* * * [A] court may decide whether a [plaintiff] has stated a cause of action by ruling on whether the emotional distress alleged is serious as a matter of law.'" (Alterations original.)Dickerson v. Internatl. United Auto Workers Union (1994),98 Ohio App.3d 171, 183, quoting Paugh, 6 Ohio St.3d at 78. In his deposition, Mr. Cochran states that the emotional distress with which he was afflicted put him "in a daze sometimes," included feelings of embarrassment, and caused him to be occasionally absent from work. Further, he worries about whether his vehicles will be towed or impounded. He did not seek any counseling or professional psychiatric care. We find that this does not rise to the level of serious emotional distress required to support a claim of intentional infliction of emotional distress. Hence, we conclude that Mr. Cochran failed to adduce evidence of extreme emotional distress, while Norton adduced evidence of the lack thereof. Accordingly, no genuine issue of material fact remains on this issue, and the trial court properly entered summary judgment in favor of Norton on this claim.
Declaratory/Injunctive Relief and Damages under Section 1983
Finally, we find summary judgment to have been improperly granted on Mr. Cochran's claims for declaratory/injunctive relief and damages under Section 1983. In regard to NCC 90.35, issues remain regarding whether this ordinance was found to be unconstitutional by the United States District Court. If so, an injunction may be appropriate to preclude repeated harassing prosecutions under a statute which has already been adjudicated unconstitutional. Alexander v. Elkins (1915), 132 Tenn. 663,668 (stating that although injunctive relief is normally improper when a criminal prosecution is merely threatened, it is proper where that statute has been previously found to be unconstitutional). Further, Mr. Cochran was actually criminally charged with and tried for a violation of NCC 90.17, as well as, being threatened with having his vehicles removed by Norton pursuant to NCC 90.35. The Ohio Supreme Court has held that "[a]ny person whose rights, status or other legal relations are affected by a law may have determined any question of construction or validity arising under such law, where actual or threatened prosecution under such law creates a justiciable controversy." Pack v. Cleveland (1982),1 Ohio St.3d 129, paragraph one of the syllabus; Peltz v. S. Euclid
(1967), 11 Ohio St.2d 128, paragraph one of the syllabus. Hence, Mr. Cochran's declaratory judgment action is proper.
Mr. Cochran's damage claim appears to be based upon being forced to remove his vehicles without a pre-deprivation hearing. Norton argues that its ordinances are constitutional, and hence, it is entitled to summary judgment. The United States Supreme Court has held that the "[t]heFourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits[;] [t]hese interests — property interests — may take many forms." Bd. of Regents v. Roth (1972), 408 U.S. 564, 576,33 L.Ed.2d 548, 560. There is no apparent dispute that the vehicles Norton threatened to remove without a pre-deprivation hearing were Mr. Cochran's property. Mr. Cochran then sold the vehicles, apparently at a loss, to avoid their seizure and/or to avoid criminal prosecution under the NCC. Mr. Cochran complied with the law as set forth by Norton under color of its NCC and now seeks redress for having so complied with what he avers is an unconstitutional law. When the interests enumerated in theFourteenth Amendment's protection of property "are implicated, the right to some kind of prior hearing is paramount." Id. at 569-70,33 L.Ed.2d at 556. Hence, it appears that Mr. Cochran has stated at least a colorable claim that the NCC sections he challenges are violative of this constitutional mandate. Further, even if Mr. Cochran fails to establish financial loss, "`the denial of procedural due process should be actionable for nominal damages without proof of actual injury'" in a Section 1983 claim. (Citation omitted.) Farrar v. Hobby (1992),506 U.S. 103, 112, 121 L.Ed.2d 494, 503-04 ("Thus, [Carey v. Piphus
(1978), 435 U.S. 247, 55 L.Ed.2d 252] obligates a court to award nominal damages when a plaintiff establishes the violation of his right to procedural due process but cannot prove actual injury."). Hence, he appears to have stated a cause of action under Section 1983. See DelSignore v. McKeesport (W.D.Pa. 1988), 680 F. Supp. 200, 203 (enumerating the elements of a cause of action under Section 1983). However, we pass on these issues only to determine whether genuine issues remain to be resolved. We find that summary judgment was improperly granted on these claims because of the dispute regarding which ordinance the United States District Court found unconstitutional, the dispute regarding the constitutionality and applicability of the NCC sections that Mr. Cochran challenges, and the uncertainty regarding what law was in effect at the time Mr. Cochran was threatened by and cited by Norton. However, as Norton avers, punitive damages are not available under Section 1983 or Mr. Cochran's malicious prosecution claim against Norton. Spires v.Lancaster (1986), 28 Ohio St.3d 76, 79.
 B. Second Assignment of Error
The lower court erred in its entry of December 6, 2000 wherein itgranted defendant's motion to supplement the record.
 Fifth Assignment of Error
The lower court erred by failing to sign an order in support of itsverbal orders at the Pretrial Conference on July 27, 2000.
 Sixth Assignment of Error
The lower court erred by failing to consider Plaintiff's supplementalcomplaint for declaratory judgment.
 Ninth Assignment of Error
The lower court erred for labor [sic] under the principle of quantummeruit.
Mr. Cochran assigns error to several of the trial court's pretrial orders and the trial court's failure to award him monetary remuneration for prosecuting this case. As we find that we must reverse the trial court's entry of summary judgment, in part, and remand the cause to the trial court, these issues may become moot on remand and, in part, are not yet ripe for our review, as the trial court has not passed upon them.
The first step in determining ripeness is the requirement of finality, which "is met when `* * * the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury.'" (Citation omitted.) Karches v. Cincinnati (1988),38 Ohio St.3d 12, 14-15. As the Ohio Supreme Court held in State ex rel.Elyria Foundry Co. v. Indus. Comm. (1998), 82 Ohio St.3d 88, 89,
The ripeness doctrine is motivated in part by the desire "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements[.]" * * * As one writer has observed: "The basic principle of ripeness may be derived from the conclusion that `judicial machinery should be conserved for problems which are real or present and imminent, not squandered on problems which are abstract or hypothetical or remote.' * * * [T]he prerequisite of ripeness is a limitation on jurisdiction that is nevertheless basically optimistic as regards the prospects of a day in court: the time for judicial relief is simply not yet arrived, even though the alleged action of the defendant foretells legal injury to the plaintiff."
(Citations omitted.) See, also, Aydin Corp. v. Union of India (C.A.9, 1991), 940 F.2d 527, 528.
The trial court's pretrial orders may prove immaterial in later proceedings and are, therefore, not yet ripe for our review, or alternatively, are moot. We are unclear as to whether the trial court considered Mr. Cochran's supplemental complaint as it never ruled on Norton's motion to strike the complaint and stated in its judgment entry that it had reviewed the pleadings. However, as we find the cause must be remanded based upon the allegations in Mr. Cochran's initial complaint, this issue is either not ripe or moot if the trial court did consider that pleading. Mr. Cochran's claim for labor quantum meruit is not ripe as the cause is not yet at an end; hence, any amount he would be entitled to, if any, is not yet calculable. These issues are more appropriately addressed by the trial court on remand. In any event, due to our disposition of Mr. Cochran's other assignments of error these assignments of error are rendered moot at this point in the proceedings, and therefore, we decline to address them. App.R. 12(A)(1)(c).
 III.
Mr. Cochran's first, third, fourth, seventh, and eighth assignments of error are sustained in part and overruled in part. His remaining assignments of error are rendered moot and not ripe by our disposition of his above enumerated assignments of error. The judgment of the Barberton Municipal Court is affirmed in part, reversed in part, and the cause is remanded for further proceedings not inconsistent with this opinion.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Barberton Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to both parties equally.
Exceptions.
 ____________________________ WILLIAM G. BATCHELDER
WHITMORE, J. CONCURS.
SLABY, J. DISSENTS.