V. E. SCHEVENELL CONSTRUCTION COMPANY v. CITY OF MEMPHIS, et al..

Western Section.   June 22, 1928.

No petition for Certiorari was filed.

W. C. Rodgers, of Memphis, for appellant.
Abe D. Waldauer, Walter Chandler and A. L. Heiskell, of Memphis, for appellee.

OWEN, J.   The complainant, Schevenell Construction Company, a corporation, has appealed from a decree of the chancery court

of Shelby county, wherein, the application of the complainant, for an injunction, was denied and complainant's bill was dismissed. It appears that the bill was presented to Chancellor, M. C. Ketchum, on the 12th day of March, 1928. The Chancellor endorsed the following order on the bill:

To the Clerk and Master: "File this bill and have a copy served on the defendants, and notify them that the application for the injunction will be heard on Saturday April 14, 1928, at 9:30 a. m. In the meantime this fiat will operate as a stop order restraining the defendants or the City of Memphis for making any further arrests of the complainant, its officers or employees, because of the matters alleged in the foregoing bill. No bond will be required.

"This March 12, 1928.

"M. C. Ketchum, Chancellor."

The complainant operates what is known as a concrete mixing plant at Sledge and Woodward streets, in the City of Memphis, Tennessee. This plant has been a constant source of litigation.

It is the insistence of the City of Memphis that said plant is being operated in violation of the zoning ordinance.

The officials of the City of Memphis have instituted a series of proceedings and made arrests to prevent further violations of the zoning ordinance.

The essential parts of the prayer of complainant's bill are as follows:

"That this court issue its writ of injunction restraining the said defendants, their officers, agents and attorneys and servants from prosecuting, issuing, or causing to be issued any warrants, or other court proceedings against this complainant, its officers, agents or employees, until at least one of the proceedings now pending involving all the issues, is prosecuted to a final conclusion and the rights of both parties fully determined, under the zoning ordinance aforesaid.

"That on the final hearing hereof, the defendants, their agents, attorneys, servants and employees be perpetually and forever enjoined from further proceeding against this complainant, its officers, agents or employees in any manner whatsoever."

It appears that certain citizens of Memphis and the City of Memphis had filed a bill against the complainant, seeking to declare the operation of his plant a nuisance. This bill was filed in the early part of 1927. On the 27th day of June, 1927, the attorneys for the complainants in the nuisance suit against the Construction Company and the attorney for the Construction Company, the defendant in that litigation, and the same attorney who now appears for the complainant in the instant case, met in the chancery court clerk's office of Shelby county, when an agreement

was reached that the Construction Company would vacate the premises and move their concrete mixer plant by February 1, 1928, the Construction Company to pay the costs of the cause. When this verbal agreement, later on was reduced to writing and a decree was drawn in pursuance of said agreement ending the litigation, counsel for the Construction Company refused to approve the decree on the ground that his client did not approve of the same.

In 1921 the City of Memphis had passed an Act being Chapter 165 of the Private Acts of 1921, authorizing the city to enact zoning ordinances, to designate uses to which each building may be put in each district or zone, regulating the area, size and location thereof, and to designate trades and industries which shall be excluded from or subject to special requirements within such district.

This Zoning Act and the ordinances passed thereunder, have been upheld in the Supreme Court in the case of Spencer-Sturla Company v. Memphis, 165 Tenn., 70. In that case, the court, speaking through Mr. Justice Swiggart, said:

"The ordinance of the City of Memphis, upon the authority of which the warrant in this case was issued against the plaintiff in error, follows the authority of the statute. The offense charged in the warrant is that the plaintiff in error unlawfully maintained an undertaking establishment in a district of the city described as 'B residence district,' in which it was made unlawful by the ordinance to maintain or carry on any commercial enterprise except hotels, apartment houses, boarding and lodging houses, hospitals and clinics, educational institutions, nurseries and green houses, and public garages for storage purposes only. . . . We hold, upon the authorities hereinabove discussed, that such exclusion is a exercise of the police power."

Upon complainant's bill being dismissed, it prayed an appeal to this court, perfected the same and has assigned errors. By said assignments the complainant raises the following propositions:

(a) The arrests and prosecutions complained of were civil, instead of criminal, proceedings, as held by the Chancellor.

(b) It is evident that complainant's property rights are about to be destroyed, and this, under void provisions of the ordinance, if subject to any construction which would permit the arrests and prosecutions complained of.

(c) That defendants are estopped to prosecute complainant, its officers, agents, etc., on the grounds charged by reason of their acts and conduct or that of their predecessors in bringing about complainant's present situation, if improper.

(d) There was, and is, already pending in the same court (and before the same Chancellor—the case having been transferred

from part 1 to part 2), a proceeding involving the same rights, object and purpose sought by the repeated arrests and prosecutions, that is, to destroy complainant's business or prohibit its operation.

(e) Complainant is correctly located under the ordinance in question and such arrests and prosecutions should be prohibited.

(f) The court erred in not granting the injunction sought, or continuing the restraining order until the final hearing of this cause; because an injunction is the principal relief sought, and the facts stated in the bill are not overcome by the answer, and because it is evidence that complainant is about to, and will suffer an irreparable injury by the acts of the defendants.

Chancellor Ketchum, in refusing the injunction, delivered a lengthy opinion which is made a part of the transcript. The Chancellor was of the opinion that he was without jurisdiction to enjoin the City of Memphis and its duly authorized officers, from enforcing the ordinance in the way they deemed proper. The Chancellor cited Fritz v. Sims, 122 Tenn., 139, in which case the complainant claiming to be the owner by grants from the state of the waters of North Horn Lake and the lands surrounding same, filed his bill against the assistant game warden, alleging that the defendant had had him arrested for the violation of chapter 489 of the Acts of 1907, and had threatened him with further arrests, and asking that the defendant be enjoined from such interference with the complainant. The only purpose of the bill was to obtain relief by injunction from the annoyance of further arrests and prosecutions for the assumed violations of said Act. The court held that the chancery court is without jurisdiction to grant such relief, saying:

"It is a well-settled rule, both in England and America, that a court of equity has no jurisdiction to interfere by injunction to restrain a criminal prosecution, whether the prosecution be for violations of statutes or for an infraction of municipal ordinances."

Citing: 2 Story Equity, Sec. 893; 3 Pomeroy Equity, Sec. 1361; 22 Cyc. 903; 16 A. & E. Ency. Law, 370.

He also quotes the following from Ex parte, Sawyer, 124 U. S. 200; 31 Law Ed., 402;

"The office and jurisdiction of the court of equity, unless enlarged by an express statute, are limited to the protection of rights and property. It has no jurisdiction over the prosecution, the punishment, or the pardon of crimes or misdemeanors, or over the appointment or removal of public officers. To assume such a jurisdiction, or to sustain a bill in equity to restrain or relieve against proceedings for the punishment of offenses, . . . is to invade the domain of the courts of the common law. . . ."

The question is considered at great length in Kelly v. Conner, 122 Tenn., 339. The bills were filed by the complainants against the sheriff and district attorney of Hamilton county, and the mayor and alderman of the City of Chattanooga seeking to enjoin them from instituting and prosecuting criminal actions against them for sales of whiskey and beer that they might make as wholesale dealers at their place of business in Chattanooga, in violation of the provisions of Chapter I of the Acts of 1909, known as the Sales Act.

The grounds for asking injunctive relief were that the said Act was unconstitutional; that, properly construed, it did not prohibit the sale of whiskey and beer or wholesale; that complainants had for many years been engaged in the lawful manufacture and sale of whiskey and beer; that their distilleries, warehouses and places of business represented the investment of many thousand of dollars; that their business were valuable and profitable, and their value would be greatly depreciated and rendered almost worthless if they were prohibited from making sales of their whiskey and beer; that the value of their whiskey and beer consisted in its salability; and that if they were prohibited from selling it, its value would be destroyed and the complainant would suffer irreparable loss and injury. They allege that in order to do business they must sell, and that every sale would constitute an offense under said Act, and that the defendants had announced their intention to arrest and prosecute all persons making such sales; that this would subject the complainants to numerous prosecutions and expensive trials, under an Act which they verily believed to be void; and they prayed that the said Act be held to be unconstitutional; that it be decreed not to prohibit sales by wholesalers; and that the defendants be enjoined from arresting or prosecuting the complainants for violations of said Act pending the final determination of the suits.

The court in an exhaustive opinion by Justice Shields, said: "On account of the great importance of the case now under consideration, both because of the public interest and the value of the property involved" reviewed the authorities and reached the same conclusion which they had reached shortly before in Fritz v. Sims, supra.

Among other authorities quoted from in the opinion as holding the same view, the court quoted the following from In re Sawyer, 124 U. S., 200; 31 Law Ed., 402.

Again, quoting from Brown v. Birmingham, 140 Ala., 600; 37 Sou. 173, it is said:

"The administration of state and municipal governments, in the prosecutions of alleged violators of their penal laws of violators

of their supposed criminal laws must be left to take its own course in the courts ordained to administer those laws, unhindered by the courts of equity, whose activities are in general strictly confined to matters of a purely civil nature; and this though such administration may wrongfully entail damages upon the citizens which are grievous indeed, and beyond all remedy, either because in their nature irreparable or because he is balked of their recovery by the insolvency of those responsible for the prosecutions. There are, it is true, some so-called exceptions to the general rule we have stated; that is, there are some cases in which prosecutions for alleged violations of penal ordinances may be enjoined, but it would perhaps be more apt to say that injunctions in such cases may be granted as incidental and ancillary to the exercise of some acknowledged equity jurisdiction, resting upon other bases than the mere harassment of prosecutions under void ordinances, than that the cases form an exception to the general rule.''

The court after reviewing many cases which were relied upon as justifying the granting of injunctive relief, say:

''While some of the cases discussed, support complainant's contention, the majority of them do not; the jurisdiction of the court being sustained upon some well established ground of equity jurisdiction, and upon facts and circumstances which are not present in this case, and the injunctive relief being merely incidental and ancillary. Many of them were also suits against municipal corporations, which can be sued, and the proceedings enjoined were civil actions. For these reasons, they are not applicable or authority in this case.''

With reference to the cases relied upon as holding that the jurisdiction does not exist, it is said:

''The majority of them were bills brought to enjoin prosecutions under statutes and ordinances alleged to be illegal, in which the complainants claimed that without injunctive relief, in their business and property they would suffer great and irreparable injury and were remediless in a court of equity.''

Many of the cases so cited, it is said were bills filed to enjoin the enforcement of municipal ordinances.

Concluding their discussion of the many cases cited, the court says:

''From a careful review and consideration of all the authorities discussed, we are of the opinion that the weight of judicial opinion and text book law is with the ruling of this court, in Fritz v. Sims, supra, and, with possibly some modifications in cases where the court has assumed jurisdiction of property on other grounds, and the injunction is merely ancillary, we adhere to it. We are further of the opinion that courts of equity have no jurisdiction

to enjoin threatened criminal proceedings under a statute enacted by a state in the exercise of the police power in relation to which the legislature has complete jurisdiction, although it be charged that the statute is invalid and that a multiplicity of actions thereunder will injure and destroy civil and property rights of the complainant's and that the damages resulting will be irreparable, when the complainant's defense thereto, in a court having jurisdiction of the offense, is adequate and unembarrassed; and we hold that the chancery courts of Tennessee, neither under their inherent nor statutory jurisdiction have any such power or jurisdiction, whatever may be the exceptions to the general rule in the courts of equity of other jurisdictions.''

It is complainant's main insistence that the arrests and prosecutions complained of are civil proceedings, and therefore, this is not a bill to enjoin a criminal prosecution that, Fritz v. Sims, supra, and Kelley v. Conner, supra, were to enjoin criminal proceedings instituted by the state, on the other hand, counsel for the City of Memphis insist that:

If the actions are criminal in their character, clearly equity is without authority to restrain injunctions under criminal statutes and ordinances.

If the arrests and prosecutions are civil in character, this is immaterial, since the arrests are made pursuant to an ordinance enacted in the valid exercise of the police power, and equity is without authority to restrain the exercise of police power, whether the actions involving that exercise of power be civil or criminal in character.

The character of the ordinance, and the fact that it is a valid exercise of police power, is evident from section 2 of the enabling Act which directs that the ordinance and all regulations thereunder ''shall be designed to lessen congestion on public streets, to secure safety from fires, and other dangers, to promote the public health and welfare, including provision for adequate light, air, convenience and access.''

Swiggart, J., in the Spencer-Sturla case, supra, said:

''It seems obvious that if the powers defined in the statute under consideration can be exercised constitutionally by a municipal government, it must be by reason of the police power; and, in fact, it is conceded on the briefs of both parties that the General Assembly was acting in the exercise of the police power in the enactment of the statute. This being true . . . an exercise of the police power, otherwise valid and constitutional, cannot be defeated because property rights are taken or destroyed thereby without compensation.''

"A court of equity is without authority to enjoin prosecutions at law for violation of a valid city ordinance and to prohibit by injunction the officials of a city from prosecuting a defendant under a statute and ordinance enacted pursuant to police power.

"There were no other suits already pending in any courts involving the questions raised by the warrants under which the defendant and his agents were arrested.

"Even if the complainant's plant is properly located, its operation without a certificate of occupancy, and the manner in which it is operated, constitute a violation of the zoning ordinance."

In Henderson v. Henderson, 105 Tenn., 433, our Supreme Court says:

"The general rule undoubtedly is that an injunction will not issue from a court of equity to enjoin pending or threatened prosecutions for the violation of the criminal laws of the state. Fritz v. Sims, 122 Tenn., 137; Kelly v. Conner, 122 Tenn., 339. In the latter case the subject is considered at length and all the authorities reviewed.

"Certain exceptions to the rule just stated, however, are recognized in Kelly v. Conner. One of these exceptions is that a court of equity does have power to restrain criminal proceedings if they are instituted by a party to a suit already pending before said court of equity and to try the same right that is in issue there. In re Sawyer, 124 U. S., 200, 31 L. Ed., 402; Attorney-General v. Cleaver, 18 Ves., 211, 220; Turner v. Turner, 15 Jurist, 218; Saull v. Browns, L. R., 10 Ch., 64; Kerr v. Preston, 6 Ch. D., 463."

In the instant case there is no temporary injunction granted, the Chancellor gave a stop order when the temporary injunction was applied for, this stop order is a peculiar practice or custom adopted several years ago by the Chancellors of Shelby county, wherein, the Chancellors, by a stop order, simply request that matters remain in statu quo for a reasonable length of time allowing the Chancellor an opportunity to study the bill of the complainant and decide whether or not a temporary injunction should be granted. Very soon after this stop order was issued, the defendants, in the instant case, filed a full answer and asked that the stop order be vacated.

Mr. Gibson, in his Suits in Chancery, 2nd edition, section 857 says:

"After all, the true rule in deciding motions to dissolve, seems to be to do what a sound discretion requires."

The real determinative question, as we understand this record, is whether or not the Chancellor committed an error in refusing to grant an injunction and the injunction being the only thing prayed for, after complainant was not entitled to the injunction then its bill was properly dismissed. We have given careful con-

sideration to the bill and the answer and all the exhibits. We are of the opinion that this court has jurisdiction to pass upon this appeal; that the Chancellor was not in error in refusing the injunction and in dismissing complainant's bill.

We are of the opinion that the stop order should have been dissolved and vacated and the bill dismissed upon the bill and answer. It results that all the assignments of error are overruled and disallowed. The judgment of the lower court is affirmed, complainant and surety on appeal bond will pay the costs of the cause including the costs of the appeal for which execution will issue.

Heiskell and Senter, JJ., concur.